586 N.W.2d 894 (1998)
459 Mich. 293
JUDICIAL ATTORNEYS ASSOCIATION, Plaintiffs-Appellees, and
Government Administrators Association, Plaintiffs-Appellees and Cross-Appellants,
v.
STATE of Michigan, Governor and Attorney General, Defendants-Appellants, and
County of Wayne and Wayne County Board of Commissioners, Defendants-Cross Plaintiffs.
Docket Nos. 111782, 111785, Calendar No. 8.
Supreme Court of Michigan.
Argued October 7, 1998.
Decided December 28, 1998.
*895 Lee R. Franklin, Detroit, MI, for plaintiff-appellee Judicial Attorneys Association.
Gregory, Moore, Jeakle, Heinen, Ellison, Brooks & Lane, P.C. (by Mark L. Heinen), Detroit, MI, for plaintiff-appellee/cross-appellant Governmental Administrators Association.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and Gary P. Gordon and Katherine C. Galvin, Assistant Attorneys General, Lansing, MI, for defendants-appellants and cross-appellees State of Michigan, Governor John Engler, and Attorney General Frank J. Kelley.
Jennifer M. Granholm, Wayne County Corporation Counsel, and Edward Ewell, Jr., Deputy Corporation Counsel, Detroit, MI; and Fink Zausmer, P.C. (by David H. Fink, Gary K. August, and Amy M. Sitner), Detroit, MI, for defendants/cross-plaintiffs/appellants, Wayne County and Wayne County Board of Commissioners.

OPINION
MALLETT, C.J.
In the case of Judicial Attorneys Association and Government Administrators Ass'n v. State of Michigan, we granted leave to determine whether a provision of 1996 PA 374, MCL 600.593a; MSA 27A.593a, violates the Separation of Powers Clause of Const 1963, art 3, § 2, and the rights of members of the plaintiffs under the public employee relations act (PERA), M.C.L. § 423.201 et seq.; MSA 17.455(1) et seq. 457 Mich. 882, 586 N.W.2d 925 (1998).
We hold that subsections 593a(3)-(10) and the parallel provisions of §§ 591, 837, 8271, 8273 and 8274 of 1996 PA 374, concerning employees of the circuit, probate, and district courts, are unconstitutional. This finding makes the issue concerning the PERA moot. Under separate order we enact Administrative Order No.1998-5, concerning chief judge responsibilities and local intergovernmental relations.

I
1996 PA 374 provided that, effective October 1, 1996, a local judicial council[1] created pursuant to the act or Wayne County became the employer of the employees of the Third Judicial Circuit and Recorder's Court,[2] rather than the State Judicial Council abolished by the act.
(3) If the Wayne county judicial council is not created pursuant to subsection (1), the employees of the former state judicial council serving in the circuit in the third judicial circuit or in the recorder's court of the city of Detroit shall become employees of the county of Wayne, effective October 1, 1996.
(4) The employer designated under subsection (2) or (3), in concurrence with the chief judge of the appropriate court has the following authority:
(a) To establish personnel policies and procedures, including, but not limited to, policies and procedures relating to compensation, fringe benefits, pensions, holidays, leave, work schedules, discipline, grievances, personnel records, probation, and hiring and termination practices.
(b) To make and enter into collective bargaining agreements with representatives of those employees.
(5) If the employer designated under subsection (2) or (3) and the appropriate chief judge are not able to concur on the exercise of their authority as to any matter described in subsection (4)(a), that authority shall be exercised by either the employer or the chief judge as follows:
(a) The employer has the authority to establish policies and procedures relating to compensation, fringe benefits, pensions, holidays, and leave.

*896 (b) The chief judge has the authority to establish policies and procedures relating to work schedules, discipline, grievances, personnel records, probation, hiring and termination practices, and other personnel matters not included in subdivision (a).
On September 26, 1996, the plaintiffstwo unions whose members performed work in the Third Circuit and Recorder's Courts brought this action challenging the change of employer. The trial court issued a preliminary injunction on September 30, 1996, enjoining the change. On October 9, 1996, the Court of Appeals granted the defendants' motion for a stay of the preliminary injunction. The trial court subsequently issued a permanent injunction against enforcement of § 593a to the extent that it made Wayne County a coemployer of plaintiffs' members, but stayed the injunction pending a final decision by the appellate courts.
On March 3, 1998 the Court of Appeals upheld the trial court's finding that § 593a violated the separation of powers doctrine.[3] 228 Mich.App. 386, 579 N.W.2d 378 (1998). The majority held that the circuit court, as a division of Michigan's one court of justice, "possesses the inherent and exclusive power to manage all its operations," id. at 413, 579 N.W.2d 378, that the court's inherent administrative powers include the authority to manage all personnel matters affecting employees working within its branch, and that a "usurpation of all the court's employees can be viewed as [a] ... dangerous incursion into the judicial realm" by the legislative branch.[4]Id. at 416, 579 N.W.2d 378. We affirm.

II
Const 1963, art 3, § 2 provides:
The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.
This Court has established that the separation of powers doctrine does not require so strict a separation as to provide no overlap of responsibilities and powers. In re Southard, 298 Mich. 75, 83, 298 N.W. 457 (1941); People v. Piasecki, 333 Mich. 122, 146-148, 52 N.W.2d 626 (1952); Soap & Detergent Ass'n v. Natural Resources Comm., 415 Mich. 728, 752, 330 N.W.2d 346 (1982). If the grant of authority to one branch is limited and specific and does not create encroachment or aggrandizement of one branch at the expense of the other, a sharing of power may be constitutionally permissible. Soap & Detergent Ass'n, supra at 752-753, 330 N.W.2d 346; Mistretta v. United States, 488 U.S. 361, 382, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).
For purposes of determining the constitutionality of § 593a, the critical questions are whether the judicial branch's powers necessarily include the administrative function of controlling those who work within the judicial branch, and, if so, whether the legislatively prescribed sharing of personnel functions delineated in § 593a is sufficiently limited and specific so as not to encroach on the exercise of the constitutional responsibilities of the judicial branch.
That the management of the employees of the judicial branch falls within the constitutional authority and responsibility of the judicial branch is well established. The power of each branch of government within its separate sphere necessarily includes managerial administrative authority to carry out its operations. As this Court explained in Judges for Third Judicial Circuit v. Wayne Co., 383 Mich. 10, 21-22, 172 N.W.2d 436 (1969), superseded by 386 Mich. 1, 190 N.W.2d 228 (1971) (on rehearing):

*897 It is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments.
Thus, both the legislative department and the judicial department have certain housekeeping chores which are prerequisite to the exercise of legislative and judicial power. And, to accomplish those housekeeping chores both departments have inherently a measure of administrative authority not unlike that primarily and exclusively vested in the executive department. [383 Mich. at 20-21, 172 N.W.2d 436.]
The application of this principle to state-paid employees within each branch of government has long been uncontroversial. The Legislature provides the funding for all state employees, but state employees working for the Legislature are unquestionably under the exclusive control of the Legislature, those working for the executive branch, under the exclusive control of the executive branch, and those working for the Supreme Court and the Court of Appeals, under the exclusive control of the judicial branch.
What has proved to be so obvious in the context of state employees, however, has been more elusive in the context of Michigan's trial courts, whose employees have not always enjoyed the same clarity of status as their state-paid counterparts.[5] The explanation for this phenomenon surely lies in the complicated and diverse history of our trial courts.
There is no public environment in the state of Michigan more complex than the trial court component of the state's "one court of justice." Under art 6, § 4 of the state constitution, the Michigan Supreme Court has general supervisory control of the courts and is constitutionally responsible for the efficient and effective operation of all courts within the state court system, but the day-to-day operation of the state's trial courts is in the hands of the chief judges of each court. The chief judges in turn are accountable to the Supreme Court and to the public for the operation of their courts, and are dependent on over 150 separate local governmental units for the bulk of the operational funding for their courts. Const 1963, art 6, §§ 1, 4. MCR 8.110. Grand Traverse Co. v. Michigan, 450 Mich. 457, 475, 538 N.W.2d 1 (1995). As a further complication, the jurisdiction of some courts is spread across several counties or municipalities, which must share funding responsibilities.
Despite the complications of the trial court environment, the case law, taken as a whole, has come to strongly affirm that the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch.[6]
The judiciary is an independent department of the State, deriving none of its judicial powers from either of the other 2 departments. This is true although the legislature may create courts under provisions of the Constitution. The judicial powers are conferred by the Constitution and not by the act creating the court. The rule is well settled that under our form of government the Constitution confers on *898 the judicial department all the authority necessary to exercise its powers as a coordinate branch of the government. It is only in such a manner that the independence of the judiciary can be preserved. The courts cannot be hampered or limited in the discharge of their functions by either of the other 2 branches of government. To remove bailiffs and other court personnel for cause is an inherent power of the judiciary. [Gray v. Clerk of Common Pleas Court, 366 Mich. 588, 595, 115 N.W.2d 411 (1962).]
See also Judges of the 74th Judicial Dist. v. Bay Co., 385 Mich. 710, 727, 190 N.W.2d 219 (1971), in which this Court found the authority of the district court to set the salaries of its employees to be "wholly consonant with the constitutionally prescribed functioning of the courts under inherent powers;" Livingston Co. v. Livingston Circuit Judge, 393 Mich. 265, 225 N.W.2d 352 (1975), in which this Court relied on the inherent powers of the judiciary in holding that the circuit court was the employer of court personnel for purposes of salary negotiations; and Ottawa Co. Controller v. Ottawa Probate Judge, 156 Mich.App. 594, 401 N.W.2d 869 (1986), which affirmed the authority of the probate court to set the salaries of its employees as long as the court's total budget remains within the total budget appropriation set by the county board.
Defendants argue that the employment functions delegated to the trial court funding units by § 593a are sufficiently specific and limited so as to survive constitutional scrutiny. The Court of Appeals emphatically rejected that assertion.
Section 593a(3) is an outright takeover of the court's employees, making them employees of the county. From a separation of powers standpoint, it is troubling that persons working solely within one branch be regarded as employees of another branch of government. Employing and managing personnel to carry out day-to-day operations is one of the most basic administrative functions of any branch of government. This Court has already suggested that, pursuant to the doctrine of separation of powers, one branch of government should not be subject to oversight by another branch in personnel matters. In Beadling v. Governor, 106 Mich.App. 530, 536, 308 N.W.2d 269 (1981), this Court held that it would be a violation of the separation of powers doctrine, "if the executive branch was allowed to judge the competency of a discharged employee of the legislative branch and order reinstatement." There, this Court observed that the employee at issue in Beadling held a position that "was one of some sensitivity within the legislative process" and that if executive oversight were allowed it would "allow a dangerous incursion into the legislative realm." Id. Surely a usurpation of all the court's employees can be viewed as an equally dangerous incursion into the judicial realm. Accordingly, we view subsection 593a(3) as a violation of the Separation of Powers Clause. [228 Mich.App. at 415-416, 579 N.W.2d 378.]
We agree with plaintiffs and the Court of Appeals majority that subsection 593a(3) is not a sufficiently limited exercise by one branch of another branch's power, and therefore that it impermissibly interferes with the judiciary's inherent authority to manage its internal operations. Our reasoning applies not only to § 593a(3), but also to subsection 593a(4)-(10) which elaborate on § 593a(3).[7] Subsection 593a(3) unequivocally designates the funding unit as the employer of personnel working in the court. Subsection 593a(4)(a)-(b) gives to the funding unit exclusive authority to establish policies and procedures relating to compensation, fringe benefits, pensions, holidays, and leave of court personnel, and to make and enter into collective bargaining agreements with representatives of those employees.
Although subsection 593a(5) preserves a limited role for the chief judge of the trial court in those aspects of decision making concerning trial court personnel that the
*899 Legislature considered noneconomic, this limited return to the judicial branch of authority over employees is not sufficient to overcome the provision's constitutional flaw: that the fundamental employer role of judicial branch employees is to be exercised by the local legislative branch rather than by the judicial branch itself.
The very framework of subsections 593a(3)-(10), in which the employer function is delegated to the legislative branch and then specific, limited subfunctions returned to the judicial branch, refutes defendant's argument that the encroachment on the judicial branch's powers is specific and limited. The judicial branch is constitutionally accountable for the operation of the courts and for those who provide court services, and must therefore be the employer of court employees. It is, of course, well established, both as a practical and a constitutional matter, that in the exercise of its employment responsibilities the judiciary must take into account the limited dollars appropriated to it by the legislative branch in the exercise of the Legislature's own constitutional responsibility. See, for example, Bay Co., Judges, supra at 726-727, 190 N.W.2d 219, and Ottawa Co, supra at 603, 401 N.W.2d 869. The practical necessity for the judiciary to reach accommodation with those who fund the courts on an annual basis, however, cannot, as a constitutional matter, be used as an excuse to diminish the judiciary's essential authority over its own personnel.

III
In making the determination that § 593a violates the separation of powers doctrine, we are cognizant of the heavy burden that challenges to the constitutionality of a statute must overcome. To make a successful facial challenge to the constitutionality of a statute, the challenger "`must establish that no set of circumstances exists under which the [a]ct would be valid.'" Council of Organizations & Others for Education About Parochiaid, Inc. v. Governor, 455 Mich. 557, 568, 602, 566 N.W.2d 208 (1997), quoting United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). We believe that there is indeed no set of circumstances under which the statutory assumption by the legislative branch of the function of employer and the exercise of primary decision making concerning employment of judicial branch employees by the legislative branch does not violate the separation of powers doctrine. The judicial branch may determine on its own authority, for practical reasons, to share with the legislative branch some limited employment-related decision making upon determinating that such sharing is in the best interests of the judicial branch and the public as a whole. Such cooperation has in fact occurred and has proven to be beneficial in many jurisdictions, but the possibility that a court may choose to share decision making in a manner that resembles the scheme of § 593a does not qualify as a set of circumstances that overcomes the facial challenge. The constitutionality of an act must rest on the provisions of the act itself, and not on the compensating actions of those affected by the act. Rassner v. Federal Collateral Society, Inc., 299 Mich. 206, 215, 300 N.W. 45 (1941).
For all these reasons, we hold that subsections 593a(3)(10) and the parallel provisions of §§ 591, 837, 8271, 8273 and 8274 of 1996 PA 374 concerning employees of the circuit, probate and district courts are unconstitutional and must be stricken. We find that the stricken provisions are severable from Act 374, and see no need to strike down the entire act.

IV
The doctrine of separation of powers is a shield for each of the branches of government to use for the protection of our form of government and for the people it serves; it is not a sword to be used by one branch against another. Security for the balance of powers "consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others." Hamilton, Federalist, no 51 (New York: New York Heritage Press, 1945), p 347.
Separation of powers does not preclude what has proven to be the rule rather than the exception in the operation of Michigan's trial courts: cooperation, communication, and *900 accommodation between trial courts and their funding units in their exercise of shared responsibility to the public. The philosophical underpinnings of the separation of powers doctrine, Michigan case law, and common sense all point toward such cooperation. In Employees & Judge of the Second Judicial Dist. Court v. Hillsdale Co., 423 Mich. 705, 717, 378 N.W.2d 744 (1985), this Court observed that "an indispensable ingredient of the concept of coequal branches of government is that `each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches.' United States v. Will, 449 U.S. 200, 228, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980)."
Lack of respect, cooperation, and communication between chief judges and representatives of local funding units can produce barriers to optimal court operations, and can lead to costly litigation.

V
In the wake of the enactment of Act 374 and the filing of the plaintiffs' complaint, employment issues concerning all the state's 241 trial courts were in an increasingly unstable condition. To help resolve the immediate operational difficulties created by the situation in general, on August 18, 1997, the Supreme Court issued Administrative Order No. 1997-6.[8] The order outlined specific terms of conduct by trial court chief judges designed to maximize cooperation and communication with funding units over employment issues, within the constraints of the judiciary's fundamental constitutional obligations. In that order, we noted that with the judiciary's responsibility to determine what is reasonable and necessary to administer the courts comes not only the necessity of prudent management, but also the burden of informing, listening to, and attempting to persuade those within the legislative branch whose own duties include funding the courts.
In enacting the scheme of divided employment responsibilities that today we find to be a violation of separation of powers, we believe that the Legislature was responding to legitimate complaints by some counties that the trial court chief judges in their counties had failed to carry this burden. The clear implication of their testimony was that by excluding the counties from any involvement in or understanding of the courts' employment decisions, the courts had thwarted the counties' ability to carry out their own primary constitutional responsibilities and had unnecessarily frustrated relations with the funding units' own employees, to the detriment of the public. We believe that the testimony offered by counties before the House and Senate Judiciary Committees in the deliberations that led up to the enactment of Act 374 demonstrated the need for some chief judges to be more heedful of the practical needs of the counties in the exercise of their overall funding responsibilities for county and court operations. Therefore, under separate order today, we affirm and extend current provisions of Administrative Order No.1997-6 that we believe will serve the present, immediate need for structuring more positive relations between chief judges and their funding units in the interest of promoting greater understanding, cooperation, and better service to the public.
Affirmed.
BRICKLEY, MICHAEL F. CAVANAGH, BOYLE, WEAVER, and MARILYN J. KELLY, JJ., concurred with MALLETT, C.J.
TAYLOR, J. (dissenting).
I respectfully dissent because I am convinced that 1996 PA 374 does not, on its face, violate the Separation of Powers Clause.
In this appeal, plaintiffs Judicial Attorneys Association and Government Administrators Association challenge certain provisions of 1996 PA 374, a court reorganization act, on the basis that they violate Const 1963, art 3, § 2 (the Separation of Powers Clause) and the public employee relations act (PERA), M.C.L. § 423.201 et seq.; MSA 17.455(1) et seq. I conclude that Act 374 does not facially violate the Separation of Powers Clause. However, in the interest of providing guidance *901 to avoid potential separation of powers concerns in implementing Act 374, I agree with the Court's issuance of an administrative order that affirms and extends provisions of Administrative Order No.1997-6. I also conclude that Act 374 does not violate the PERA. I would accordingly reverse the Court of Appeals decision.
According to its title, Act 374 is designed to revise the organization and jurisdiction of the courts. For purposes of this appeal, the relevant feature of Act 374 is that it creates a coemployment relationship between local funding units and the courts. As recognized in Administrative Order No.1997-6, both the local funding unit and the chief judge have legitimate constitutional responsibilities regarding the operation of the courts. Act 374 is apparently the Legislature's attempt to delineate a workable, cooperative relationship between these entities and to include both in the collective bargaining process. Specifically, § 593a provides in pertinent part:[1]
(3) If the Wayne county judicial council is not created pursuant to subsection (1), the employees of the former state judicial council serving in the circuit court in the third judicial circuit or in the recorder's court of the city of Detroit shall become employees of the county of Wayne, effective October 1, 1996.
(4)The employer designated under subsection (2) or (3), in concurrence with the chief judge of the appropriate court, has the following authority:
(a) To establish personnel policies and procedures, including, but not limited to, policies and procedures relating to compensation, fringe benefits, pensions, holidays, leave, work schedules, discipline, grievances, personnel records, probation, and hiring and termination practices.
(b) To make and enter into collective bargaining agreements with representatives of those employees.
(5) If the employer designated under subsection (2) or (3) and the appropriate chief judge are not able to concur on the exercise of their authority as to any matter described in subsection (4)(a), that authority shall be exercised by either the employer or the chief judge as follows:
(a) The employer has the authority to establish policies and procedures relating to compensation, fringe benefits, pensions, holidays, and leave.
(b) The chief judge has authority to establish policies and procedures relating to work schedules, discipline, grievances, personnel records, probation, hiring and termination practices, and other personnel matters not included in subdivision (a).
Plaintiffs, bargaining representatives for employees serving in the Third Circuit Court and Recorder's Court, filed the present action challenging these provisions of Act 374. The trial court held that Act 374 violated the Separation of Powers Clause and issued a permanent injunction against enforcement of § 593a to the extent that it made Wayne County a coemployer of plaintiffs' members, but stayed this injunction pending a final decision by the appellate courts. The trial court also held that these provisions did not violate the PERA. The Court of Appeals majority affirmed the trial court's finding that § 593a violated the separation of powers and concluded that the PERA challenge was accordingly moot. 228 Mich.App. 386, 579 N.W.2d 378 (1998). In a dissent, Judge Markman concluded that the separation of powers challenge was not ripe, that a facial challenge on separation of powers grounds failed, and that the coemployment relationship did not violate the PERA. We granted leave to determine whether these provisions of Act 374 violate the Separation of Powers Clause or the PERA.[2] 457 Mich. 882, 586 N.W.2d 925 (1998).
*902 A. The Separation of Powers Challenge
In Council of Organizations & Others for Ed. About Parochiaid v. Governor, 455 Mich. 557, 568-569, 566 N.W.2d 208 (1997), we set forth the applicable standard of review for facial constitutionality challenges:
The party challenging the facial constitutionality of an act "must establish that no set of circumstances exists under which the [a]ct would be valid. The fact that the... [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient...." [United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).] "[I]f any state of facts reasonably can be conceived that would sustain [a legislative act], the existence of the state of facts at the time the law was enacted must be assumed." 16 Am Jur 2d, Constitutional Law, § 218, p 642.
Clearly, a party challenging the facial constitutionality of a statute faces an extremely rigorous standard.
Further, "[i]t is one of the oldest and most well-established tenets of our jurisprudence that legislative enactments enjoy a presumption of constitutionality." Gora v. Ferndale, 456 Mich. 704, 719, 576 N.W.2d 141 (1998). Courts are required to give the "presumption of constitutionality to a statute and construe it as constitutional unless the contrary clearly appears." Caterpillar Inc v. Dep't of Treasury, 440 Mich. 400, 413, 488 N.W.2d 182 (1992).
The Separation of Powers Clause is set forth in Const 1963, art 3, § 2:
The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.
The Court of Appeals majority correctly summarized relevant case law regarding the separation of powers at 409-410, 488 N.W.2d 182:
This separation of powers among the three branches of government is designed to preserve the independence of each branch. In re 1976 PA 267, 400 Mich 660, 662; 255 NW2d 635 (1977).
In [Employees & Judge of the Second Judicial Dist. Court v. Hillsdale Co., 423 Mich. 705, 717, 378 N.W.2d 744 (1985)] the Michigan Supreme Court explained:
"Each branch of government has inherent power to preserve its constitutional authority.
"`It was certainly never intended that any one department, through the exercise of its acknowledged powers, should be able to prevent another department from fulfilling its responsibilities to the people under the Constitution.' [O'Coin's, Inc. v. Worcester Co. Treasurer, 362 Mass. 507, 511, 287 N.E.2d 608 (1972).]
"However, an indispensable ingredient of the concept of coequal branches of government is that `each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches.' United States v. Will, 449 US 200, 228; 101 SCt 471, 66 LEd2d 392 (1980)."
The doctrine of separation of powers "has never been interpreted in Michigan as meaning there can never be any overlapping of functions between branches or no control by one branch over the acts of another." People v. Trinity, 189 MichApp 19, 22-23, 471 NW2d 626 (1991), citing Soap & Detergent Ass'n v. Natural Resources Comm, 415 Mich 728, 752, 330 NW2d 346 (1982). Instead, Michigan has adopted the view of the separation of powers doctrine that James Madison expressed in The Federalist No. 47: "`[W]here the whole power of one department is exercised by the same hands which possess the whole power of another department, the fundamental principles of a free constitution are subverted.'" Soap & Detergent Ass'n, supra at 752, 330 N.W.2d 346 (emphasis in original).
In his dissenting opinion, Judge Markman aptly added United States Supreme Court discussion of separation of powers to these authorities:
The constitutional separation of powers is concerned with "`the encroachment or aggrandizement of one branch at the expense *903 of the other,'" Mistretta [v. United States, 488 U.S. 361, 382, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)] (citation omitted), and with disruptions of the "proper balance" between the branches that prevent one branch from "accomplishing its constitutionally assigned functions...." Morrison v Olson, 487 US 654, 695, 108 SCt 2597, 101 LEd2d 569 (1988). [228 Mich.App. at 430, 579 N.W.2d 378.]
Despite largely agreeing on the applicable standard of review, presumption of constitutionality, and parameters of the Separation of Powers Clause, the Court of Appeals majority and dissent came to opposite conclusions about whether Act 374 facially violated the Separation of Powers Clause. This is also true with respect to the majority and dissent in this Court. I am convinced that plaintiffs' facial separation of powers challenge to Act 374 fails when the presumption of constitutionality and relevant standard of review are conscientiously applied.
I begin by summarizing the challenged subsections of § 593a. Subsection 3 states that employees serving in the court are employees of Wayne County (given the failure to timely create a Wayne County Judicial Council). Subsection 4 states that the employer, i.e., Wayne County, "in concurrence with the chief judge" has authority (a) to establish personnel policies and procedures with respect to various topics and (b) to collectively bargain with the employees' representatives. Subsection 5 states that, in the event of an impasse between the employer and the chief judge, the employer retains authority with respect to listed fiscally related subject matters, and the chief judge retains authority over all other personnel matters.
The linchpin of the separation of powers challenge to these provisions is that they make Wayne County, which is part of the legislative branch of government, the "employer" of persons serving in the judicial branch. Whether these provisions violate the Separation of Powers Clause turns on what giving Wayne County "employer" status means.
The presumption of constitutionality requires us to construe Act 374 in a constitutional manner if at all possible. In drafting statutes, legislators are presumed to know the law. Orzel v. Scott Drug Co., 449 Mich. 550, 576, n. 29, 537 N.W.2d 208 (1995); People v. Cash, 419 Mich. 230, 241, 351 N.W.2d 822 (1984). Legislators are also, of course, charged with knowledge of the Michigan Constitution. And, as United States Chief Justice John Marshall pointed out in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 179-180, 2 L.Ed. 60 (1803), legislators, having taken the same oath as we take, surely are as committed to fidelity to the constitution as we are. Accordingly, we must, without reservation, assume that the drafters of Act 374 were aware of the Separation of Powers Clause and the case law summarized by the Court of Appeals quoted above and that they intended Act 374 not to run afoul of this constitutional requirement (which is simply to say that, notwithstanding a status description of the county as "employer," we must assume, unless the context of the statute makes such impossible, that the Legislature wished to not deprive the judiciary of its well understood necessary powers with regard to its employees).
A full consideration of the challenged provisions of § 593a in context demonstrates that such a constitutionally repugnant meaning of "employer" was not intended. As stated by Judge Markman in his dissent, the designation of Wayne County as "employer" is "merely a declaration of status." 228 Mich.App. at 443, 579 N.W.2d 378. Despite this designation, "[s]ubsections 593a(4)-(9) of Act 374 clearly indicate the court's continuing authority over employees serving in the court"; Act 374 "clearly contemplates a critical role for the judiciary in exercising authority over employees serving in the judiciary, including a role in collective bargaining." Id. at 443, 445, 579 N.W.2d 378. I also agree with the following observations of Judge Markman:
That Wayne County, in concurrence with the court, has some authority over employees serving in the judiciary becomes potentially problematic only if the two branches disagree over some matter.... [A]lthough the impasse provisions of subsection 593a(5) appear to place certain *904 subjects relating to employees serving in the court beyond the authority of the court in the event of an impasse, a closer look at this division of authority demonstrates that the subject matters committed to the authority of the local unit are those strictly relating to financesthe legitimate legislative concern of the local unitwhile all other authority regarding personnel is committed to the court. These provisions represent a good-faith effort by the Michigan Legislature to roughly restate presently recognized spheres of authority on the part of local units and the judiciary in the operation of the trial courts. [Id. at 446-448, 579 N.W.2d 378.]
Accordingly, considered in context, the challenged provisions do not constitute "an outright takeover of the court's employees" as the Court of Appeals majority concluded. Id. at 415, 579 N.W.2d 378. Rather, Act 374 outlines a coemployment relationship between the local funding unit and the chief judge in which they are to work together cooperatively.
Because both local funding units and the chief judge have legitimate responsibilities relating to the courts, see Administrative Order No.1997-6, any system will include the potential for separation of powers violations. Act 374 is no exception; the relationship it delineates between local funding units and the chief judge could potentially lead to overstepping by either entity that would constitute a violation of the Separation of Powers Clause. However, the mere potential of a constitutional violation is insufficient to support a successful facial challenge. If we construe Act 374 in accordance with the presumption of constitutionality and consider its provisions in context, it is clear that plaintiffs have failed to establish that no set of circumstances exist under which Act 374 would be valid. In fact, Judge Markman suggested six examples of circumstances under which Act 374 would not violate the Separation of Powers Clause:
1. The county, pursuant to subsection 593a(6), appoints the chief judge as its agent for collective bargaining, and subsequently ratifies the contract as negotiated; 2. The chief judge, pursuant to subsection 593a(6), appoints the county (or the county's representative) as agent for collective bargaining, and subsequently ratifies the contract as negotiated; 3. The county and the chief judge are separately represented, but as each issue for negotiation arises, these agents confer and reach accord regarding the position to be taken; 4. The county and the chief judge are separately represented, and with regard to some noneconomic issue their respective representatives differ; the chief judge prevails under subsection 593a(5)(b), which even the majority concedes must be constitutional (because it identifies a constitutional imperative pursuant to which the chief judge must be able to act unilaterally); 5. The county and the chief judge are separately represented, and with regard to some economic issue their respective representatives differ; if the chief judge can make a compelling case to establish that the funding necessary to implement his position is minimally required for the court to fulfill its constitutional responsibilities, the chief judge prevails under Judges for Third Judicial Circuit [v. Wayne Co. (On Rehearing ), 386 Mich. 1, 190 N.W.2d 228 (1971)]; 6. The county and the chief judge are separately represented, and with regard to some economic issue their respective representatives differ; the chief judge is unable to make a compelling case to establish that the funding necessary to implement his position is minimally required for the court to fulfill its constitutional responsibilities; the county allows the chief judge full leeway to resolve the problem as he chooses within the parameters of a lump sum budget; again, there is no constitutional difficulty. Ottawa Co Controller v. Ottawa Probate Judge, 156 MichApp 594, 603-604, 401 NW2d 869 (1986). [228 Mich.App. at 440, n. 10, 579 N.W.2d 378.]
Accordingly, I believe that plaintiffs' facial challenge to Act 374 on separation of powers grounds fails.
In light of the inherent potential for separation of powers violations in the operation of the courts I agree with the Court's issuance of an administrative order. This administrative order would provide guidance in the implementation of Act 374.
*905 In summary, I believe the mistake the majority makes is to confuse what, in its view, is an unwise or ill-advised law, and I agree that it might be that, with a facially unconstitutional law. We should always exercise judicial review with great care to be sure that we are not intruding into political questions that are reserved to the Legislature. This venerable rule of judicial prudence is even more important when we intervene into matters that raise questions about the judiciary's inherent powers because of the natural inclination toward self-interest. Indeed, because we are charged with maintenance of the constitutional design so as to preserve separation of powers, we should be even more sensitive in matters declaring judicial prerogatives in order to avoid compromising our authority to speak and be respected as impartial arbiters of the constitution. I fear that the majority has neglected that important consideration today.

B. PERA Challenge
Plaintiffs also contend that Act 374 violates the PERA. In light of my conclusion that Act 374 does not, on its face, violate the Separation of Powers Clause, I am compelled to address this issue. Initially, I agree with the following observation of the Court of Appeals:
Of course, if 1996 PA 374 is inconsistent with [the PERA] or any previously enacted statute, then Act 374 is not, on that account alone, invalid. Rather, Act 374 would effect a repeal of such other statute by implication. Washtenaw Co Rd Comm'rs v. Public Service Comm, 349 Mich 663, 680, 85 NW2d 134 (1957); Antrim Co Social Welfare Bd v. Lapeer Co Social Welfare Bd, 332 Mich 224, 228; 50 NW2d 769 (1952). This notion is a corollary to the principle that one Legislature cannot enact irrepealable legislation or restrict its own power or that of its successors concerning the repeal or amendment of statutes. Atlas v. Wayne Co Bd of Auditors, 281 Mich 596, 599, 275 NW 507 (1937). [228 Mich.App. at 393, n. 4, 579 N.W.2d 378.]
In his dissent, Judge Markman accurately summarized the parameters of the PERA:
The PERA is the principal state law regulating public employment relations; it generally prevails over conflicting laws that do not specifically address collective bargaining. Local 1383, Int'l Ass'n of Fire Fighters, AFL-CIO v. City of Warren, 411 Mich 642, 655; 311 NW2d 702 (1981). "A primary goal of the [PERA] is to resolve labor-management strife through collective bargaining." Port Huron Ed Ass'n v. Port Huron Area School Dist, 452 Mich 309, 311; 550 NW2d 228 (1996). Under the PERA, a public employer must bargain collectively with representatives of its employees regarding wages, hours, and other terms and conditions of employment. MCL 423.215(1); MSA 17.455(15)(1); Port Huron, supra at 317 [550 N.W.2d 228]. [228 Mich.App. at 457, 579 N.W.2d 378.]
In St. Clair Prosecutor v. AFSCME, Local 1518, 425 Mich. 204, 233, 388 N.W.2d 231 (1986), we recognized the coemployer status in collective bargaining. We noted that this concept is especially useful in the "historically fragmented power structure of county government." Id. We held that the use of the coemployer status, which may require public employees' representatives to bargain with more than one person, "does not appear to impose an undue burden on the collective bargaining process." Id.
In his dissent, Judge Markman aptly stated:
Contrary to plaintiff JAA's assertion, members of different branches of government may be considered coemployers for purposes of the PERA. St Clair Prosecutor involved a coemployer relationship between a county prosecutor, who is a member of the executive branch, People v. Trinity, supra at 22 [471 N.W.2d 626]; People v. Potts, 45 MichApp 584, 589; 207 NW2d 170 (1973) (partial concurrence by Holbrook, P.J.), and a county, which in those circumstances was operating within the legislative sphere, Alan v. Wayne Co, 388 Mich 210, 245, 200 NW2d 628 (1972). [228 Mich.App. at 459, 579 N.W.2d 378.]
Here, § 593a makes Wayne County and the chief judge coemployers for purposes of the PERA. Section 593a provides roles for both the local funding unit and the chief in *906 collective bargaining, requires both to participate in collective bargaining,[3] and binds both to the terms of a collective bargaining agreement. Because Act 374 does not limit plaintiffs' ability to collectively bargain over all the terms and conditions of employment and ensures that both Wayne County and the chief judge will be bound by any collective bargaining agreement, I conclude that it is not inconsistent with the PERA.

Conclusion
For these reasons, I conclude that Act 374 does not, on its face, violate the Separation of Powers Clause and that it does not violate the PERA. I would accordingly reverse the judgment of the Court of Appeals regarding these issues. I would also separately issue an administrative order to provide guidance in implementing Act 374.
NOTES
[1] The option to create a judicial council as employer expired on October 1, 1996.
[2] Pursuant to Act 374, Recorder's Court ceased to operate October 1, 1997, because the Third Circuit Court acquired its jurisdiction and functions. As of the date of the issuance of this opinion, federal challenges to the abolition of Recorder's Court are pending.
[3] Judge Markman dissented in part, stating that because no controversy had yet arisen concerning § 593a between the Third Circuit or its chief judge and Wayne County, the judiciary's authority had not been undermined and that the dispute was not ripe for adjudication. On the PERA question, Judge Markman found the county and the court to be coemployers under § 593a, and agreed with the trial court that § 593a did not violate the PERA because it did not impair plaintiffs' members' ability to collectively bargain over the terms and conditions of their employment.
[4] Because the majority found § 593a to be unconstitutional, it reasoned that the claim that the provision violated the public employees relations act was moot.
[5] In 1971, Justice Thomas E. Brennan, in a separate opinion in Wayne Co. Judges, 386 Mich. at 17, 190 N.W.2d 228, observed that cases from as late as the mid-1950's "cast light on the `hands off' attitude of former times, in which it was thought that the administration of the courts was a thing distinct and apart from the administration of justice."
[6] Over the years, some trial court judges have arrived at agreements under which the trial courts have allowed their funding units to negotiate on their behalf directly with court employees. In those jurisdictions, typically, the terms and conditions of the court employees vary little if at all from those of the funding unit employees. In contrast, in many jurisdictions the funding units have not desired to play any role concerning the terms and conditions of trial court employment. And in a few jurisdictions, from time to time, courts and their funding units have found themselves at loggerheads over employment issues. It is from this category that our case law concerning separation of powers and court employment arises.
[7] Our reasoning also applies to the identical, parallel provisions found in §§ 591, 837, 8271, 8273, and 8274 of 1996 PA 374, concerning employees of the circuit, probate, and district courts. Because we have concluded that subsections 593a(3)-(10) are unconstitutional, the issue of the rights of members of the plaintiffs under the public employee relations act is moot.
[8] The order by its explicit terms did not address the employment questions raised by this case for employees of the Third Circuit, Recorder's Court, and the 36th District Court.
[1] I note that other provisions of Act 374, not raised here, similarly provide for a coemployment relationship between the funding unit and court with respect to other courts. See §§ 591, 8271, and 8274.
[2] We also granted leave to consider whether Act 374 violates the Headlee Amendment, Const 1963, art 9, § 29. Our decision regarding that issue is separately reported in Nos. 111785, 111786.
[3] While subsection 593a(7) states that a chief judge may elect not to participate in collective bargaining, Administrative Order No.1997-6 (and the new administrative order that will supplant it) require a chief judge choosing not to directly participate to designate a representative of the local funding unit to act on the court's behalf in collective bargaining.