Office of the Attorney General · State of Texas

October 14, 2002

Ms. Alicia Key
Administrative Director
Office of Court Administration
205 West 14th Street, Suite 600
Austin, Texas 78711-2066

Opinion No. JC-0563

Re: Constitutionality of statute authorizing the Texas Commission on Human Rights to review the personnel policies and procedures of Texas state appellate courts for compliance with the Texas Human Rights Act (RQ-0538-JC)

Dear Ms. Key:

Your predecessor, as Administrative Director of the Office of Court Administration, "an agency of the state," TEX. GOV'T CODE ANN. § 72.011(a) (Vernon 1998), asked about the application of Labor Code sections 21.451 through 21.456 to the fourteen intermediate courts of appeals in Texas.[1] Among other things, the Labor Code provisions require the Texas Commission on Human Rights (the "Commission") to review the employment policies and procedures of the appellate courts for compliance with the Texas Human Rights Act (the "Act"). See TEX. LAB. CODE ANN. ch. 21 (Vernon 1996 & Supp. 2002). He asked whether the application of these provisions to the state appellate courts violates Texas Constitution article II, section 1, which provides for the separation of powers, or otherwise infringes on the independence of the judiciary. See Request Letter, supra note 1, at 1. We conclude that sections 21.451 through 21.456 of the Labor Code as applied to the appellate courts do not violate art II, section 1 as a matter of law. Such provisions could be applied in an unconstitutional way, for example, if the court's budget or the employment conditions of court employees were affected to an extent that would interfere with or impair the administration of justice, but this determination requires fact-findings, which cannot be made in the opinion process. See Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4; JC-0027 (1999) at 3; JC-0020 (1999) at 2.

Chapter 21 of the Labor Code provides for implementing the policies of title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213. See TEX. LAB. CODE ANN. § 21.051 (Vernon 1996). It expressly prohibits discrimination in employment based on race, color, disability, religion, sex, national origin, or age. See id. Authority to administer and enforce the statute is conferred upon the Commission. See id. § 21.003 (Vernon Supp. 2002); see also TEX. GOV'T CODE ANN. ch. 461 (Vernon 1998 & Supp. 2002) (establishing Texas Commission on Human Rights).

---

[1]See Letter from Jerry L. Benedict, Administrative Director, Office of Court Administration, to Honorable John Cornyn, Texas Attorney General (Apr. 30, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

Sections 21.451 through 21.456 of the Labor Code were adopted in 1999 in legislation that continued the Commission after review under the Sunset Act. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 872, § 15, 1999 Tex. Gen. Laws 3556, 3562. Most of these provisions had previously been included in the General Appropriations Act and had been applicable to the judiciary. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 1452, art. IX, §§ 123, 123.4.b., 1997 Tex. Gen. Laws 5535, 6416 (requiring standardized personnel policies, procedures, and training for state agencies and public institutions and systems of higher education); Act of May 25, 1995, 74th Leg., R.S., ch. 1063, art. IX, § 110, 1995 Tex. Gen. Laws 5242, 6119.

Section 21.452 of the Labor Code requires each state agency to "develop and implement personnel policies and procedures that comply with this chapter, including personnel selection procedures that incorporate a workforce diversity program." TEX. LAB. CODE ANN. § 21.452 (Vernon Supp. 2002). "State agency" is defined to include "the supreme court, the court of criminal appeals, a court of appeals, or the State Bar of Texas or another judicial agency having statewide jurisdiction." *Id.* § 21.002(14)(B). Thus, sections 21.452 through 21.456, like the predecessor appropriation act provisions, apply to the fourteen courts of appeals that are the subject of this inquiry. The Commission is required to review the personnel policies and procedures of each state agency on a six-year cycle to determine whether they comply with the Act and to recommend changes if it determines that an agency is not in compliance. *See id.* § 21.453. The state agency must consider these recommendations and determine whether to revise its personnel policies and procedures. *See id.* In addition, it must also submit to the Commission, the governor, the legislature, and the Legislative Budget Board a report stating whether it implemented the Commission's recommendations and, if it did not, its reasons for rejecting them. *See id.* § 21.454. The agency must reimburse the Commission for the expense of the audit, and if the Commission determines that an agency has failed to develop and implement the requisite employment policies, the agency's appropriated funds are subject to a $5,000 reduction. *See id.* §§ 21.455-.456. The courts of appeals, as state agencies within Labor Code chapter 21, must develop and implement personnel policies and procedures that comply with chapter 21 and are subject to the review and reporting requirements of the statute, as well as the reimbursement and penalty provisions.

The request letter states that "[i]t is not the position of the Chief Justices" of the courts of appeals "that the courts may engage in unlawful employment practices in violation of the Labor Code." Request Letter, *supra* note 1, at 3; *see also* TEX. GOV'T CODE ANN. § 72.041 (Vernon 1998) (judges of appellate courts shall encourage recruitment of law clerks and staff attorneys that reflect gender, racial, and ethnic diversity of this state). They simply contend that the application of the Labor Code provisions to the appellate courts violates the doctrine of separation of powers and may violate other provisions relating to the independence of the judiciary. *See* Request Letter, *supra* note 1, at 3. Article II, section 1 of the Texas Constitution provides for the separation of powers:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons,

> being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. Article V, section 3 of the Texas Constitution makes it clear that the judicial power of the state is vested in the supreme court, except as otherwise provided in the constitution. *See* TEX. CONST. art. V, § 3; *see also id.* art. V, §§ 4-8 (establishment and jurisdiction of other state courts); 31 (supreme court is responsible for administration of judicial branch).

"The separation-of-powers doctrine" incorporated in article II, section 1, "prohibits one branch of government from exercising a power inherently belonging to another branch." *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001) (citing *State Bd. of Ins. v. Betts*, 308 S.W.2d 846, 851-52 (Tex. 1958)). The executive or legislative branch may not exercise the judicial powers vested by the constitution in the courts. However, "[i]t is only when the functioning of the judicial process in a field constitutionally committed to the control of the courts is interfered with by the executive or legislative branches that a constitutional problem arises." *Id.*; *see also Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998); *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990).

The independence of the judiciary is also protected by the inherent and implied powers of courts, which derive from common law and the separation of powers provision. *See Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398-99 (Tex. 1979); *see also* TEX. GOV'T CODE ANN. § 21.001 (Vernon 1988 & Supp. 2002) (a court has all powers necessary for exercise of its jurisdiction and enforcement of its lawful orders). The inherent and implied powers "enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity." *Eichelberger*, 582 S.W.2d at 399. Texas courts have recognized their inherent powers in matters such as controlling their judgments, regulating behavior in the courtroom, and in providing personnel to aid the court in the exercise of its judicial function. *See id.* at 398 n.1 (citing *Comm'rs. Ct. of Lubbock County v. Martin*, 471 S.W.2d 100, 109 (Tex. Civ. App.-Amarillo 1971, writ ref'd n.r.e.) (power of a court to provide for adult probation officers).

We find no Texas cases directly addressing the constitutional validity of statutes setting employment policies and conditions for court personnel. *But cf. State v. Hardy*, 769 S.W.2d 353 (Tex. App.-Houston [1st Dist.] 1989, no writ) (application of county grievance procedure to employees of district court clerk does not violate separation of powers provision). The request letter relies on out-of-state cases as authority that provisions like Labor Code sections 21.451 through 21.456 may not constitutionally be applied to the courts. *See* Request Letter, *supra* note 1, at 2-3. We have reviewed these cases as well as other out-of-state cases that have considered similar issues and have found them to express divergent opinions on what constitutes interference with the judicial branch by another branch of government. An out-of-state court's conclusion that a particular statute interferes with the judicial branch must be examined in the context of the state's constitutional provisions and common law, and we cannot assume that any such conclusion would be consistent with Texas law.

The request letter cites the decision of the Supreme Court of Pennsylvania in *First Judicial District of Pennsylvania v. Pennsylvania Human Relations Commission* concluding that the separation of powers doctrine precluded the Pennsylvania Human Relations Commission from investigating and adjudicating a complaint of sexual harassment filed against the judicial branch. *See First Jud. Dist. of Pa. v. Pa. Human Relations Comm'n*, 727 A.2d 1110, 1112 (Pa. 1999). The court stated:

> The purpose of the commission's involvement in this case . . . is to investigate the appellee's handling of the alleged misconduct and to impose a policy change which would affect all employees of the court. But whether or not the commission would attempt to impose this remedy, its activity would necessarily involve some measure of directing the appellee [the court] to act or not to act in a personnel matter, and its activity could include requiring court officials to produce records and documents, answer interrogatories, permit investigative interviews, and appear before the commission or its hearing officers in the context of a hearing. Such interference in the operation of the courts is prohibited by the separation of powers doctrine.

*Id.* at 1112. The decision was based on the following provision of the Pennsylvania Constitution:

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, . . . and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution . . . . All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

PA. CONST. art. V, § 10(c). This provision gives the Supreme Court of Pennsylvania "the sole power and the responsibility to supervise the 'practice, procedure, and the conduct of all courts.'" *First Jud. Dist.*, 727 A.2d at 1112; *see also McDonald v. Campbell*, 821 P.2d 139, 145 (Ariz. 1991) (state whistle blower statute did not apply to employees of state supreme court, because state constitution granted supreme court the right to hire employees "to serve at its pleasure").

The Texas Constitution does not include the kind of language relied upon in *First Judicial District*. Instead, it reflects the idea of cooperation among the branches of government:

> (a) The Supreme Court is responsible for the efficient administration of the judicial branch and shall promulgate rules of administration *not inconsistent with the laws of the state* as may be necessary for the efficient and uniform administration of justice in the various courts.

> (b) The Supreme Court shall promulgate rules of civil procedure for all courts *not inconsistent with the laws of the state* as may be necessary for the efficient and uniform administration of justice in the various courts.

TEX. CONST. art. V, § 31 (emphasis added).

The Supreme Court of Michigan in *Judicial Attorneys Association v. State* found unconstitutional a statute that designated the employees of certain courts as county employees. *See Jud. Att'ys Ass'n v. State*, 586 N.W.2d 894, 896 (Mich. 1998). The statute gave the county, in concurrence with the chief judge of the court, authority over personnel policies relating to compensation, benefits, leave, work schedules, discipline, grievances, hiring and termination, and collective bargaining agreements with the employees' representatives. *See id.* at 896. The court determined that the provision authorized the county rather than the judiciary to exercise "the fundamental employer role of judicial branch employees." *Id.* at 899. The court stated that the case law of Michigan, "taken as a whole, has come to strongly affirm that the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch." *Id.* at 897. The removal of bailiffs and other court personnel for cause was an inherent power of the Michigan judiciary. *See id.* at 898.

We also looked at other out-of-state cases addressing state statutes affecting court employees. In particular, we looked at judicial decisions considering whether collective bargaining requirements may be applied to court employees consistently with the separation of powers provisions of the particular state constitution. The courts of certain other states concluded that labor board decisions affecting nonjudicial court employees do not compromise judicial functions. *See Teamsters Local 115 v. Pa. Labor Relations Bd.*, 619 A.2d 382, 387-88 (Pa. Commw. 1992); *Cir. Ct. of Or., Fifteenth Jud. Dist. v. AFSCME Local 502-A*, 669 P.2d 314, 314 (Or. 1983); *State ex rel. O'Leary v. Mo. State Bd. of Mediation*, 509 S.W.2d 84, 88 (Mo. 1974). *But see Admin. Office of Ill. Cts. v. State and Mun. Teamsters, Chauffeurs and Helpers Union, Local 726*, 657 N.E.2d 972, 982 (Ill. 1995) (application of state public labor relations act to court reporters would cause large intrusion into judicial authority and violate separation of powers). In *Circuit Court of Oregon*, the Supreme Court of Oregon considered whether the Public Employee Collective Bargaining Act (PECBA), Oregon Revised Statutes sections 243.650 through 243.782, was constitutional as applied to juvenile court judges and counselors. *See Cir. Ct. of Or.*, 669 P.2d at 314. The court considered the provisions of the Oregon Constitution that provided for the separation of powers and that vested the judicial power of the state "in one supreme court" and other courts created by law, provisions similar to article II, section 1 and article V, section 1 of the Texas Constitution. *See* OR. CONST. art. III, § 1; art. VII, § 1. The court inquired whether a person of another department was exercising a judicial function and whether a department of government, by legislation or otherwise, was interfering with the court's exercise of its judicial power. *See Cir. Ct. of Or.*, 669 P.2d at 317. The Oregon Supreme Court concluded that the Employee Relations Board (the "ERB") did not divest the juvenile court of its authority to regulate the employment of its counselors but instead established the manner in which it would exercise that authority. *See id.* The ERB did not appoint or discharge counselors or

designate their salaries or conditions of employment. *See id.* at 318. While it might on occasion interpret and enforce the collective bargaining agreement or find facts to resolve a conflict about those issues, this was the performance of an administrative function rather than a judicial function. *See id.* The Oregon court determined that legislation could affect the courts so long as it did not unduly burden or substantially interfere with the judiciary, and that "general institutional inconvenience" was not enough to render legislation "constitutionally defective." *See id.* at 319.

The out-of-state cases express widely diverging opinions about the protection from interference by other branches of government that the separation of powers clause affords the judicial branch. The judicial decisions of each state reflect that state's constitutional provisions and its precedents interpreting the constitution. Their findings on interference with the judiciary or violations of the separation of powers must be evaluated in the context of each state's law and their conclusions are not necessarily consistent with the law on separation of powers as it has developed in Texas. We look instead to Texas authorities, which provide helpful analogies, even though they do not directly address this question.

The Texas authorities on the courts' inherent powers as to staffing and funding assist us in answering the question. *See Dist. Judges of 188th Jud. Dist. v. County Judge Gregg County*, 657 S.W.2d 908, 909 (Tex. App.-Texarkana 1983, writ ref'd n.r.e.); *Vondy v. Comm'rs Ct. of Uvalde County*, 620 S.W.2d 104, 109-10 (Tex. 1981). *Vondy* addressed the compensation of a constable, an officer whose issuance of writs constituted an integral part of the judicial process. *See Southwest Guar. Trust Co. v. Providence Trust Co.*, 970 S.W.2d 777, 782 (Tex. App.-Austin 1998, pet. denied); *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App.-Houston [14th Dist.] 1996, writ denied); *Byrd v. Woodruff*, 891 S.W.2d 689, 708 (Tex. App.-Dallas 1994, writ denied) (discussing derived judicial immunity). The constable of Precinct 6, Uvalde County complained that the commissioners court had not set any salary for him, and the Texas Supreme Court held that the commissioners court must set a reasonable salary for constables. *Vondy*, 620 S.W.2d 105, 108-09. Article XVI, section 61 of the Texas Constitution mandated that constables receive a salary. Moreover, the constable's service of process was necessary to the functioning of the judiciary. "The judicial system of this state cannot function properly if those officials who are responsible for carrying out certain duties in that process are not properly compensated." *Id. at* 110. The supreme court then stated as follows:

> The legislative branch of this state has the duty to provide the judiciary with the funds necessary for the judicial branch to function adequately. If this were not so, a legislative body could destroy the judiciary by refusing to adequately fund the courts. The judiciary must have the authority to prevent any interference with or impairment of the administration of justice in this state.

*Id.* A legislative or executive branch interference with the judiciary's employment of persons necessary for it to function adequately could under some circumstances have equally negative consequences for the judiciary.

Another decision on the judiciary's power to require a legislative body to fund it sufficiently summarizes the law in this area and points out the need for evidence relevant to such claims. In *District Judges,* the judges sought a writ of mandamus compelling the commissioners court of Gregg County to fund increased salaries for court personnel and to implement a court administration system. County-funded court administration systems had been provided by statute in certain counties, but not in Gregg County. *See District Judges,* 657 S.W.2d at 909 n.1. The court of appeals noted that the judicial branch "possesses inherent power to require the legislative and executive branches to provide essential staffing and facilities for it to properly perform its judicial functions." *Id.* at 909. Moreover, for the separation of powers principle to operate as a system of checks and balances, "there must be a reasonable and proper exercise of power by each branch and a harmonious cooperation among the three." *Id.* The judicial branch "depends entirely upon the legislative and executive branches for its funding and for the practical enforcement of its decrees," and when the "spirit of cooperation fails the judiciary must resort to its inherent power to insure that it will have the means to discharge its responsibilities." *Id.* This power is not unlimited, however, particularly in matters of government finances. *See id.* The court of appeals noted that the commissioners court had statutory authority to set the salaries of court personnel paid for from county funds and accorded a presumption of validity to the court's actions under this statute. *See id.* at 910. "While the administrative findings of the courts concerning its own needs must be given proper weight and deference, there are important reasons why they should not be accepted as valid until they have been established by the fact finding process." *Id.* Because the district court judges had failed to show that it was essential for the county to furnish certain staff benefits and facilities to the courts, there was no basis for the exercise of inherent power. *See id.*

Finally, we look at a case that addressed a statutorily-required grievance procedure applicable to employees of the district clerk, "an integral part of the judiciary." *Hardy,* 769 S.W.2d at 355. The commissioners courts in populous counties were required by statute to develop procedures for employee grievances concerning wages, hours, or conditions of work, and after Harris County established a grievance procedure thereunder, two deputy district clerks filed grievances. *See id.* at 353-54. The Harris County District Clerk filed suit challenging the constitutionality of the statute as violative of the constitutional provision on separation of powers. *See id.* at 354. The court began with a presumption in favor of the validity of the legislation. *See id.* (citing *Spring Branch I.S.D. v. Stamos,* 695 S.W.2d 556, 558 (Tex. 1985), *appeal dismissed,* 475 U.S. 1001 (1986)). It relied on *Coates v. Windham* for its understanding of article II, section 1. *Coates* addressed the validity of an appropriations act rider appropriating funds for a prison site that could be acquired only when authorized by a board consisting of the governor and two other state officers. *See Coates v. Windham,* 613 S.W.2d 572, 574 (Tex. Civ. App.-Austin 1981, no writ). The rider did not violate article II, section 1, even though it authorized the governor to exercise a limited and negative legislative power in approving the purchase. *See id.* at 575. "[T]he proper interpretation of the separation of powers clause is that the provision prohibits a transfer of a whole mass of powers from one department to another, and it prohibits a person of one branch from exercising a power historically or inherently belonging to another department." *Hardy,* 769 S.W.2d at 354 (citing *Coates,* 613 S.W.2d at 576).

The *Hardy* court acknowledged that the district clerk's office was established by the judicial article of the constitution, *see* TEX. CONST. art. V, § 9, and that the clerk was an integral part of the judicial branch of government, but found that the clerk did not exercise judicial powers as contemplated by the constitution. *See Hardy,* 769 S.W.2d at 354. The clerk served as custodian and supervisor of the records of the court, while the "judicial power ascertains and enforces the law as created by the legislative power." *Id.* at 355 (citing TEX. CONST. art. II, § 1, interp. commentary (Vernon 1984)). The clerk's duties were defined by the legislature and they could be changed by statute. *See id.* Any encroachment on the district clerk's powers did not constitute a transfer of judicial powers from one branch to another. *See id.* Thus, article II, section 1, was not violated by the application of the grievance procedure to deputy district clerks.

Following the guidance found in Texas cases, we first point out the importance of cooperation among the branches. *See District Judges,* 657 S.W.2d at 909. We also accord Labor Code sections 21.451 through 21.456 the presumption of validity. *See Hardy,* 769 S.W.2d at 345; *District Judges,* 657 S.W.2d at 910. The Labor Code provisions do not transfer judicial powers to another branch of government, nor do they remove from the appellate courts their authority to employ their personnel.

Moreover, the legislature has historically established some working conditions of court employees. It sets compensation for employees of the judicial branch. *See* TEX. GOV'T CODE ANN. §§ 22.301 (Vernon 1988) (salaries of "the clerks, other officers, and employees of the supreme court, court of criminal appeals, and courts of appeals shall be determined by the legislature in its appropriation acts for the support of the judiciary"); 659.011 (Vernon 1994 & Supp. 2002) ("salaries of all state officers and employees are in the amounts provided by the biennial appropriations act"). The judicial branch of government is also subject to other statutes establishing employment conditions. *See id.* ch. 573 (Vernon 1994 & Supp. 2002) (nepotism); *id.* ch. 658 (hours of labor); *id.* ch. 661 (leave); *see also Bean v. State,* 691 S.W.2d 773, 775 (Tex. App.-El Paso 1985, pet. ref'd) (conviction of judge for appointing relative to represent indigent defendants); Tex. Att'y Gen. LA-111 (1975) at 3 (nepotism law prohibits district judge from appointing relative to represent indigent defendants).

There may be circumstances where executive or legislative branch actions affecting the employment conditions of judicial branch employees would interfere with the exercise of judicial powers. *See generally Vondy,* 620 S.W.2d at 110 (judiciary must have authority to prevent interference with or impairment of the administration of justice). Provisions affecting an appellate court's funding, such as charging it for audit costs and decreasing its appropriation for not developing and implementing the requisite employment policies, could be burdensome enough to interfere with the exercise of judicial powers. *See id.* Whether such interference exists is a question of fact, to which the court's evidence as to its needs is relevant. *See District Judges,* 657 S.W.2d at 910 (court's funding needs must be established by fact finding process). Questions of fact cannot be investigated or resolved in the opinion process. *See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0328 (2001) at 6; JC-0285 (2000) at 5 n.2; JC-0152 (1999) at 12; JC-0020 (1999) at 2; DM-98 (1992) at 3; H-56 (1973) at 3; M-187 (1968) at 3; O-2911 (1940) at 2. Accordingly, we conclude that sections 21.451 through 21.456 of the Labor Code, as applied to the intermediate appellate courts of Texas, do not as a matter of law violate article II, section 1 of the Texas Constitution.

## S U M M A R Y

Labor Code sections 21.451 through 21.456 require the Texas Commission on Human Rights to review the employment policies and procedures of "state agencies," which include the appellate courts, to determine whether they are in compliance with the Texas Human Rights Act. A court must reimburse the Commission for the expense of an audit, and if the Commission determines that a court has failed to develop and implement the requisite employment policies, the court's appropriated funds are subject to a $5,000 reduction.

Texas Constitution article II, section 1, which provides for the separation of powers, is not as a matter of law violated by the application of Labor Code sections 21.451 through 21.456 to the appellate courts.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee