BERNSTEIN, J.
(dissenting). Our Constitution provides that the Civil Service Commission has plenary authority to “regulate all conditions of employment.” Const 1963, art 11, § 5. The majority concludes that the 2011 amendments to the State Employees’ Retirement Act (SERA), MCL 38.1 et seq., do not infringe the commission’s constitutional grant of authority where the commission has previously acquiesced to SERA. Put simply, the majority holds that to reject only those amendments found in 2011 PA 264, and not SERA in its entirety, would constitute a line-item veto on the part of the commission and that the separation of powers doctrine dictates that an executive body cannot exercise legislative powers.
As an initial matter, I agree with the majority that a pension is a “condition 0 of employment” as that phrase is used in Const 1963, art 11, § 5, and that the commission’s authority under that provision includes the authority to establish, maintain, and amend a pension plan.[1] However, I disagree that the commission’s *347 historical practice towards SERA constitutes executive acquiescence that would waive its right to object to an unconstitutional legislative infringement. Moreover, because 2011 PA 264 is an unconstitutional infringement of the commission’s constitutional grant of plenary authority, rejection of the amendments constitutes a recognition of the amendments’ unconstitutional nature and not a legislative action akin to a line-item veto. I would therefore affirm the Court of Appeals judgment and hold that the challenged provisions of 2011 PA 264 are unconstitutional as applied to employees in the classified civil service.
I. SEPARATION OF POWERS
I agree with the majority that the separation of powers doctrine generally dictates that an executive body like the commission does not have the authority to either enact statutes or appropriate funds.[2] Save for the express grant of authority that allows the commission to increase rates of compensation for employees in the classified civil service, the commission does not otherwise have the power to appropriate funds in the pursuit of regulating conditions of employment.
The majority thus reasons that the commission lacks the authority to require the Legislature to enact statutes as the commission sees fit. I agree with the majority that the commission’s constitutional grant of authority does not go so far as to allow the commission to “dictate [to the Legislature] the nuances of statutory schemes,” even when those statutory schemes touch upon the commission’s sphere of authority (“conditions of employment”). Ante at 331. However, there is a meaningful difference between an *348 assertion that the commission has the power to dictate what the Legislature enacts into law and an assertion that the commission is empowered to object to a legislative incursion into the commission’s sphere of authority. The former is a usurpation of legislative powers, which the separation of powers doctrine forbids; the latter is merely a recognition that because the commission’s “grant of power is from the Constitution, any executive, legislative or judicial attempt at incursion into that ‘sphere’ would be unavailing.” Council No 11, AFSCME v Civil Serv Comm, 408 Mich 385, 408; 292 NW2d 442 (1980).
The majority assumes without deciding that the commission has a constitutional grant of authority to establish, maintain, and amend a pension plan. When the Legislature interferes with this plenary grant of authority, the commission may object to this improper interference. In so doing, the commission does not seek to exercise the legislative power to enact, amend, or veto laws. Instead, the commission’s rejection of the challenged provisions in 2011 PA 264 is better characterized as an objection to the Legislature’s failure to respect the separation of powers doctrine. If one accepts that a pension is a condition of employment over which the commission has plenary authority, the Legislature is the entity that intrudes upon another branch of government by making laws that attempt to govern what lies in the commission’s sphere. An objection to unconstitutional action does not equate to the exercise of legislative authority. The commission’s objection is not a line-item veto of legislative action that would itself constitute a violation of the separation of powers doctrine, but is instead better understood as a declaration that the legislative action is a violation of the separation of powers *349 doctrine and is therefore unconstitutional at the outset.[3]
II. EXECUTIVE ACQUIESCENCE
The majority also considers whether the Legislature intruded into the sphere of the commission’s authority in enacting the challenged provisions of 2011 PA 264. Again, in assuming without deciding that pensions are conditions of employment over which the commission has plenary authority, the majority concludes that SERA itself is an intrusion into the commission’s authority and that the challenged provisions are more of the same. Faced with the Legislature’s violation of the separation of powers, the majority turns to the idea of executive acquiescence, concluding that the commission acquiesced to “the Legislature’s presumed violation of the separation of powers when it made SERA applicable to civil servants[.]” Ante at 333. In support of this claim, the majority cites Civ Serv R 5-13, which provides that “[a] classified employee is eligible for retirement benefits as provided by law.” Because the law regarding retirement benefits now encompasses the challenged provisions enacted in 2011 PA 264, the majority concludes that the commission cannot now revoke its acquiescence without itself violating the separation of powers doctrine by directing the Legislature to strike these provisions.
In support of the idea of executive acquiescence, the majority relies on a series of cases that considered the concept of judicial acquiescence. This line of cases dealt with judicial acquiescence to legislative action. In *350 Perin v Peuler, 373 Mich 531, 541; 130 NW2d 4 (1964), this Court first defined the scope of judicial rulemaking by stating that
[t]he function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5); a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will.
However, this Court recognized a limit to this general grant of constitutional authority: “[A]s is evident from the plain language of [Const 1963] art 6, § 5, this Court’s constitutional rule-making authority extends only to matters of practice and procedure.” McDougall v Schanz, 461 Mich 15, 27; 597 NW2d 148 (1999). In distinguishing between substantive rules and rules of practice and procedure, the McDougall Court found that the Perin Court had “overstated the reach of our rule-making authority,” explaining that the distinction between rules of substance and procedure “is one that was not only advocated by recognized scholars contemporaneously with the development and passage of our 1963 Constitution, but one that. . . the drafters contemplated.” Id. at 29-30.
The McDougall majority thus stands for the proposition that this Court’s constitutional grant of authority to promulgate rules is not a grant of plenary authority. Although this Court has “exclusive rule-making authority in matters of practice and procedure,” id. at 26, the McDougall majority was primarily concerned with making clear that this Court does not have such authority with regard to substantive rules. In contrast, there is no such limitation on the commission’s authority over conditions of employment in either the plain language of the Constitution or in the *351 minds of the ratifiers, whose clear intent was to remove the classified civil service from legislative interference.[4] Moreover, McDougall is inapplicable to the question of even judicial acquiescence, let alone executive, as this Court recognized that it “is not authorized to enact. . . rules that establish, abrogate, or modify the substantive law.” Id. at 27. The holding in McDou-gall thus concerned whether the Legislature had enacted a substantive or a procedural rule; in other words, because this Court does not have the constitutional authority to promulgate substantive rules, there is no question of judicial acquiescence where the Court attempts to act outside of the bounds of its sphere of authority.
In contrast to the situation presented in McDougall, the commission’s authority over conditions of employment is plenary; any legislative incursion into this sphere is itself a violation of the separation of powers doctrine. The commission’s involvement, however minimal, in the enactment of SERA and amendments thereafter speaks nothing to this underlying constitutional principle.[5]
The majority finally relies on Judicial Attorneys Ass’n v Michigan, 459 Mich 291; 586 NW2d 894 (1998). In that case, this Court held that statutory provisions that designated counties as the employers of judicial employees violated the separation of powers doctrine. Id. at 302-303. In so holding, this Court acknowledged that practical necessity (in particular, the lack of the *352 ability to appropriate funds) drove the judiciary to reach certain accommodations with the Legislature. Id. However, this Court specifically found that this prior acquiescence could not “be used as an excuse to diminish the judiciary’s essential authority over its own personnel.” Id. at 303.[6] Judicial Attorneys Ass’n thus stands for the proposition that prior acquiescence alone, especially in the face of practical considerations such as the lack of appropriation authority, does not waive one branch’s right to contest the intrusion of another branch in the future.[7]
The majority holds that the commission “may adopt rules [like Civ Serv R 5-13] that acquiesce in a statute that allegedly intrudes on its sphere of authority, as it has here.” Ante at 334. This is in line with the observation in Judicial Attorneys Ass’n that one branch may decide, for practical reasons, to acquiesce to another branch’s involvement. See Judicial Attorneys Ass’n, 459 Mich at 304 (“Separation of powers does not preclude what has proven to be the rule rather than the exception in the operation of Michigan’s trial *353 courts: cooperation, communication, and accommodation between trial courts and their funding units in their exercise of shared responsibility to the public. The philosophical underpinnings of the separation of powers doctrine, Michigan case law, and common sense all point toward such cooperation.”). However, “[t]he constitutionality of an act must rest on the provisions of the act itself, and not on the compensating actions of those affected by the act.” Id.
Put simply—one branch’s acquiescence, however affirmative, cannot render an unconstitutional act constitutional.[8] That the commission has historically worked to reach an accommodation with the Legislature in the enactment and subsequent amendments of SERA, to facilitate cooperation among different branches of government does not strip it of the ability to object to the challenged provisions of 2011 PA 264. Mere acquiescence cannot cure a violation of the separation of powers doctrine. If pensions do fall within the commission’s sphere of authority, the commission cannot have the ability to waive their constitutional grant of plenary authority.[9] Although the majority suggests that the commission would itself violate the separation of powers doctrine by directing the Legislature to exercise its legislative powers in striking the chal *354 lenged provisions of 2011 PA 264, I respectfully disagree. Instead, I would conclude that plaintiffs are merely requesting that we strike the unconstitutional provisions of the amended SERA, not directing the Legislature to revive a “prior version of the law [that] no longer exists.” Ante at 334.[10]
Because the challenged provisions of 2011 PA 264 constitute violations of the separation of powers doctrine, I would hold that they are not properly part of SERA.
III. CONDITION OF EMPLOYMENT
While the majority assumes without deciding that pensions are a condition of employment as that phrase is understood in Const 1963, art 11, § 5, Justice KELLY would uphold 2011 PA 264 on the basis that it does not regulate conditions of employment. I respectfully disagree with Justice Kelly’s conclusion. I believe that pensions are a condition of employment.
Justice KELLY argues that the plain language of the Constitution indicates that the phrase “conditions of employment” was not intended as a broad catchall, and is instead limited to internal matters. However, I believe this reading fails to account for this Court’s prior pronouncement that the commission has the authority “to regulate employment-related activity involving internal matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance, including the power to prohibit activity during working hours which is found to interfere with satisfactory job perfor- *355 manee.” Council No 11, 408 Mich at 406-407 (emphasis added).[11] Certainly a broad definition of the phrase “conditions of employment” need be employed in order to tie together such disparate concepts as disciplinary procedures and collective bargaining. Furthermore, this Court continued by stating that “it is within contemplation that off-duty political involvement may adversely affect a classified employee’s performance at work. If and when it does, the commission is empowered to deal with such circumstances on a case-by-case basis.” Id. at 407. A definition that embraces off-duty political involvement is a broad one that can also encompass pensions, which are arguably easier to square away as employment-related activity involving internal matters.
Justice KELLY also notes that, by the time the 1963 Constitution was ratified, SERA had been in effect for 20 years; by keeping the same grant of authority found in the 1908 Constitution, the ratifiers thus did not intend to eliminate the Legislature’s authority to enact and amend SERA. In support of this proposition, Justice Kelly cites a comment that suggests the ratifiers intended that pension plans not be diminished or impaired. But as stated earlier, this supposed intention shines no light on whether the . commission can properly challenge legislative incursion into its sphere of authority. I agree that the ratifiers did not intend to proscribe the Legislature’s ability to enact or amend SERA, but this did not change the underlying presumption that the commission maintained the constitutional authority to regulate pensions; that the commission did not challenge the enactment or amendment of SERA prior to the ratification of the *356 1963 Constitution only indicates that it did not believe that the Legislature had yet overstepped its bounds.[12]
Justice KELLY finally notes that the challenged provisions of 2011 PA 264 only affect the accrual of future pension benefits; because such benefits are only payable to individuals upon leaving the classified civil service, pension benefits follow employment, and are not conditions of employment. The constitutional difference wrought by this change in preposition appears to hang on two observations: first, that pension benefits are payable in the future, and second, that a certain retirement election allowance is not required for continued employment.
As to the first, there is nothing in the plain language of the Constitution that suggests that a “condition of employment” is limited in scope to those internal matters that are present during a particular time period. This Court has previously stated that grievance procedures are unquestionably within the commission’s grant of authority, Council No 11, 408 Mich at 406, and one hopes that grievance procedures are not part of everyday reality for most employees in the classified civil service. Indeed, the ability to plan ahead for expected future outcomes is part and parcel of the internal, employment-related activity that constitutes conditions of employment. See Wescott v Civil Serv Comm, 298 Mich App 158, 164; 825 NW2d 674 (2012) (holding that the commission does not need to consider disability decisions rendered by other state agencies in making a determination on a request for long-term *357 disability benefits); Mich State Employees Ass’n v Dep’t of Mental Health, 421 Mich 152, 163-164; 365 NW2d 93 (1984) (holding that it is the constitutional duty of the commission to establish discharge procedures in accordance with due process). The very motivation for the creation of the classified civil service points to the same conclusion: a merit-based system was memorialized in our Constitution out of a fear of a patronage system, which could result in the future termination of otherwise qualified employees upon a change in political fortune. See Mich State Employees Ass’n, 421 Mich at 159-160. As to the second, a condition of employment is not defined by whether a classified civil service employee is required to behave a certain way in order to maintain employment. This definition is not broad enough to encompass “job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance,” Council No 11, 408 Mich at 406, which are all unquestionably part of the commission’s grant of plenary authority.
Because I conclude that pensions are a condition of employment under Const 1963, art 11, §5,1 would hold that the challenged provisions of 2011 PA 264 improperly intrude on the commission’s constitutional grant of plenary authority.
IV. CONCLUSION
I would hold that pensions fall under the commission’s plenary authority over conditions of employment under Const 1963, art 11, § 5. Because the commission has not acquiesced to the Legislature’s intrusion into its constitutional sphere of authority, I would hold that the challenged provisions of 2011 PA 264 constitute a violation of the separation of powers doctrine. Accordingly, I would affirm the decision of the Court of Appeals.

 Although the majority assumes this without deciding, Justice Kelly would hold that pensions are not conditions of employment under Const 1963, art 11, § 5. I respectfully disagree and address this argument in Part III of my dissent.

 See Const 1963, art 3, § 2.

 See Judicial Attorneys Ass’n v Michigan, 459 Mich 291, 303-304; 586 NW2d 894 (1998) (holding certain statutory provisions enacted by the Legislature to be unconstitutional under the separation of powers doctrine and therefore struck).

 See Council No 11, 408 Mich at 397-401 (detailing the history of the civil service system in Michigan).

 “The practical necessity for the judiciary to reach accommodation with those who fund the courts on an annual basis, however, cannot, as a constitutional matter, be used as an excuse to diminish the judiciary’s essential authority over its own personnel.” Judicial Attorneys Ass’n, 459 Mich at 302-303.

 Although “[t]he judicial branch may determine on its own authority, for practical reasons, to share with the legislative branch some limited employment-related decision making upon determining that such sharing is in the best interests of the judicial branch and the public as a whole[,] . .. [t]he constitutionality of an act must rest on the provisions of the act itself, and not on the compensating actions of those affected by the act.” Id. at 303-304 (emphasis omitted).

 In holding that a legislative veto provision enacted by Congress was unconstitutional, the United States Supreme Court declined to find significant the fact that Congress had previously enacted hundreds of such provisions in prior decades that had gone unchallenged: “Convenience and efficiency are not the primary objectives—or the hallmarks—of democratic government and our inquiry is sharpened rather than blunted by the fact that congressional veto provisions are appearing with increasing frequency in statutes which delegate authority to executive and independent agencies[.]” Immigration & Naturalization Serv v Chadha, 462 US 919, 944; 103 S Ct 2764; 77 L Ed 2d 317 (1983).

 Justice MCCORMACK finds it meaningful that the commission, “as the affected constitutional actor,” is not party to this lawsuit and has not officially objected to the Legislature’s actions. Ante at 345. However, because the commission and the Legislature cannot acquiesce to a violation of the Michigan Constitution and thereby cure it, I do not believe this distinction is of any importance in my analysis.

 I also note that Civ Serv R 5-13 is a thin reed upon which to hang a constitutional waiver. If the Legislature’s enactment of the challenged provisions of 2011 PA 264 are indeed unconstitutional as a violation of the separation of powers doctrine, they would not properly be benefits “as provided by law,” given that our Constitution is considered part of Michigan law.

 This characterization of plaintiffs’ requested relief runs counter to this Court’s holding in Judicial Attorneys Ass’n, 459 Mich at 304, in which the challenged provisions alone were found to be unconstitutional and thus struck.

 I believe that the use of the phrases “such as” and “including” suggests that this was not meant as an exhaustive list.

 Myers v United States, 272 US 52, 171; 47 S Ct 21; 71 L Ed 160 (1926) (“When instances which actually involve the question are rare, or have not in fact occurred, the weight of the mere presence of acts on the statute book for a considerable time, as showing general acquiescence in the legislative assertion of questioned power, is minimized.”).