# STATE OF MICHIGAN

# COURT OF APPEALS

OAKLAND COUNTY,

Plaintiff-Appellant,

v

STATE OF MICHIGAN, DEPARTMENT OF
LICENSING AND REGULATORY AFFAIRS,
and MICHIGAN INDIGENT DEFENSE
COMMISSION,

Defendants-Appellees.

FOR PUBLICATION
July 17, 2018
9:00 a.m.

No. 341172
Court of Claims
LC No. 17-000216-MZ

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Oakland County objected to the Legislature's amendment of an act creating the Michigan Indigent Defense Commission (MIDC), giving authority to the Executive Branch, through the Department of Licensing and Regulatory Affairs (LARA), to set standards for attorneys appointed to represent indigent clients. The bulk of the county's argument revolved around its claim that the MIDC Act and the standards approved by LARA usurped the judiciary's power to manage and control the court system and the legal profession. Although there is some overlap, the limited sharing of powers envisioned by the act does not offend the separation of powers clause of Const 1963, art 3, § 2 and the county is not otherwise entitled to relief. We therefore affirm the Court of Claims' summary dismissal of Oakland County's suit.

## I. BACKGROUND

In 2011, the governor signed an executive order establishing an advisory commission on the defense of indigent criminal defendants. Based on the commission's report, the Legislature passed 2013 PA 93, the MIDC Act. MCL 780.981 *et seq*. The act created the MIDC and designated it as an autonomous entity within the judicial branch, tasked with proposing minimum standards for providing effective assistance of counsel for indigent criminal defendants.

On January 4, 2016, the MIDC submitted its initial set of four standards to the Michigan Supreme Court for its review. The Supreme Court conditionally approved these standards, "subject to and contingent on legislative revision of the MIDC Act to address provisions that the Court deem[ed] to be of uncertain constitutionality." AO No. 2016-2, 499 Mich xcviii, xcviii-xcix (2016). Specifically, the Court was concerned that the creation of an "autonomous entity"

-1-

within the judicial branch unconstitutionally usurped its exclusive authority "to exercise general supervisory control" over judicial branch employees. See Const 1963, art 6, §§ 1, 4, and 7. The Court opined that the act's definition of "indigent criminal defense system" (ICDS), combining the trial court with its nonjudicial local government, and allowing the autonomous MIDC to "[d]evelop[] and oversee[] the implementation, enforcement, and modification of minimum standards, rules, and procedures to ensure that indigent criminal defense services providing effective assistance of counsel are consistently delivered to all indigent adults in this state," and "to assure compliance with the commission's minimum standards, rules, and procedures" "might contain enforcement mechanisms" that usurp the Supreme Court's control over the court system. Const 1963, art 6, § 4. Moreover, the Court interpreted certain act provisions as "arguably allowing the MIDC to regulate the legal profession, a power granted to the judiciary by Const 1963, art 6, § 5. The Court indicated that its conditional approval would be automatically withdrawn on December 31, 2016 if the Legislature did not act. AO 2016-2, 499 Mich at xcix-c.]

The Legislature thereafter amended the MIDC Act, effective January 4, 2017. 2016 PA 439. The Legislature removed the MIDC from the judicial branch and placed it within LARA, an executive branch agency. MCL 780.985(1); MCL 780.983(b). The Legislature also revised the definition of an ICDS to mean only the local unit of government that funds a trial court (the funding unit), rather than the funding unit *and* the trial court. MCL 780.983(g). The amendments further provided that the minimum standards enacted under the MIDC Act shall not infringe the Supreme Court's authority under Const 1963, art 6, §§ 4 and 5. MCL 780.985(3); MCL 780.991(3)(a).

State Court Administrator Milton L. Mack, Jr. subsequently advised the state's chief judges that the act's amendments "appear to address issues of uncertain constitutionality that were raised by the Court." However, Mack asserted, because the legislative amendments did not take effect by December 31, 2016, the Supreme Court's conditional approval of the MIDC's proposed standards had expired.

On May 22, 2017, LARA approved the MIDC's proposed minimum standards for guaranteeing the delivery of indigent criminal defense services (substantively the same standards that had been conditionally approved by the Supreme Court). Standard 1 provided minimum standards for continuing legal education (CLE) and attorney training. Standard 2 set standards for an attorney's initial client interview. Standard 3 described standards for investigations and for certain expert witness matters. Standard 4 provided minimum standards for defense counsel's first appearance and subsequent appearances at critical stages in the proceedings. The act required the ICDSs to submit plans to comply with the act and the standards by November 20, 2017, and gave the MIDC 60 days to review the plans.

On June 20, the MIDC published "A Guide for Submission of Compliance Plans, Cost Analyses, and Local Share Calculations" "to assist with the preparation of the cost analysis and compliance planning for delivering indigent criminal defense services." The Guide provided that the ICDSs must address "each standard individually" and offered "General Guidelines for Compliance Plans." The MIDC also published a "Compliance Plan for Indigent Standards 1-4" containing further "instructions" and "guidelines" regarding the filing of a plan for compliance with the indigent defense standards.

## II. THE LAWSUIT

Oakland County filed suit, asserting constitutional challenges to the MIDC Act and the approved indigent criminal defense standards. As the trial court summarized the complaint:

> Count I alleges that the MIDC Act is "facially unconstitutional" under Const 1963, art 3, § 2 – the separation of powers clause – because "it empowers LARA to usurp the Michigan Supreme Court's constitutional authority to regulate and enforce minimum qualifications and professional standards for attorneys who represent indigent criminal defendants." Count II alleges that both the MIDC Act and the approved standards . . . are "facially unconstitutional" under Const 1963, art 6, § 5 because "they usurp the Michigan Supreme Court's constitutional authority to promulgate rules governing practice and procedure in Michigan Courts." Count III sounds a similar refrain, with the exception being that it asserts the MIDC Act and the approved standards violate Const 1963, art 6, § 4. Lastly, Count IV alleges that the MIDC promulgated "mandatory rules and procedures" in violation of the [Administrative Procedures Act (APA)]. The complaint sought declaratory relief and a stay of the enforcement of the approved standards.

In lieu of an answer, defendants sought summary disposition. Defendants denied any conflict between the act and standards and the Supreme Court's constitutional authority. The county asserted that the standards did not regulate the practice and procedure of attorneys and trial courts; rather, the standards regulated the funding units who must pay for ICD services. The act prohibited any minimum standards infringing on the Supreme Court's authority, defendants continued. Likewise, the MIDC's minimum standards regulated the funding unit, not the conduct and qualifications of attorneys, the practice of law, or the administration of justice by courts. Defendants argued that the Guide was not subject to the APA because it was not a mandatory rule. Defendants further contended that Oakland County's challenge to possible future standards was not yet ripe.

In response to defendants' motion and its own cross-motion for summary disposition, the county contended that the act allows the MIDC to regulate the legal profession, a power granted to the judicial branch, in violation of the separation of powers clause found in Const 1963, art 3, § 2. The act and the LARA-approved minimum standards unconstitutionally allowed an executive branch entity to regulate practice and procedure in the courts, the county asserted. And overall, the act and standards infringed the Supreme Court's exclusive authority to supervise the administration of justice in all state courts under Const 1963, art 6, § 4. The county opined that Standard 4 impermissibly created a new right to appointed counsel at arraignment. The county alleged conflicts between the Michigan Court Rules and the act and standards regarding indigency determinations and counsel appointments. Specifically, the county complained that the act took indigency determinations away from the courts and placed them with the funding units. The county argued that Standard 3 usurped the judiciary's authority to set standards for the appointment of expert witnesses. Finally, the county contended that the guidelines promulgated by the MIDC were more than educational and contained compulsory provisions, requiring the MIDC to follow the APA before adopting them.

-3-

In response, defendants added that Standard 4 did not create a new right to counsel at arraignment or conflict with the Michigan Court Rules. Standard 3, which required ICDSs to fund reasonable requests for experts as required by law, likewise did not conflict with the United States Constitution, criminal statutes, or rules of evidence, defendants contended. Overall, defendants emphasized, the MIDC Act was specifically amended to address the Supreme Court's constitutional concerns.

As noted, the trial court granted summary disposition in defendants' favor and dismissed Oakland County's suit. The court rejected the county's facial challenge to the constitutionality of the MIDC Act. The trial court recognized the Supreme Court's constitutional authority to regulate the practice of law, the conduct of attorneys, and the conduct of court proceedings. But the court noted that the constitution does not require an absolute separation of powers, allowing some overlapping of functions, responsibilities, and powers between branches. Regarding the county's claim that the MIDC Act improperly permitted LARA to regulate the conduct and minimum qualifications of attorneys who represent indigent criminal defendants, the court noted that the county merely pointed to the minimum standards. However, the standards implemented by LARA do not aid in determining whether the MIDC Act is *facially* unconstitutional. The county's separation of powers argument lacked merit for that reason alone.

Moreover, the court continued, the MIDC Act at most provided for a permissibly limited sharing or overlapping of functions. The act regulated the funding units, rather than trial courts themselves, and thus did not encroach on judicial authority. The act expressly recognized the Supreme Court's constitutional authority over court practice and procedure. It did not permit the MIDC to require the judiciary's compliance with the minimum standards and did not attempt to control what happens in court. The MIDC had no authority over who becomes a licensed attorney; the act merely addressed a county-controlled system to ascertain indigency and provide qualified attorneys to indigent defendants. Court precedent, rather than separate MIDC standards, would be used to determine the quality of representation to be required by ICDSs.

The trial court discerned no conflict between the MIDC Act and the Michigan Court Rules. MCL 780.991(3)(a) provided that nothing in the act "shall prevent a court from making a determination of indigency for any purpose consistent with [Const 1963, art 6]." Further, MCL 780.991(3)(a) stated that "[a] trial court may play a role in this [indigency] determination as part of any [ICDCs's] compliance plan under the direction and supervision of the supreme court. . . ." Accordingly, courts were not prevented from making a determination of indigency for any purpose. In the absence of an inherent conflict between the act and a court rule, the court found it is unnecessary to determine whether judicial authority has been infringed or supplanted.

The trial court next addressed Oakland County's challenges to the minimum standards. In relation to the county's contention that Standard 4 improperly required a defendant to be represented at arraignment, the court noted that the federal constitution does not *require* the appointment of counsel at the arraignment, but nothing *prohibits* it. A state may afford its citizens greater rights than those required at the federal level. The court determined that the Legislature had done exactly this in MCL 780.991(3)(a), by providing that a determination of indigency shall be made "not later than at the defendant's first appearance in court." Hence, there was no conflict between Standard 4 and the pertinent controlling authorities.

The court found no conflict between Standard 3 and the judiciary's authority to define and regulate practice and procedure. Standard 3 provided that counsel must request the assistance of experts when reasonably necessary and that reasonable requests must be funded as required by law. Because Standard 3 required funding of experts *as required by law*, the funding requirement was commensurate with the very authority the county claimed that the MIDC disregarded. Further, Standard 3 did not interfere with the trial court's gatekeeping function.

The trial court noted that the county had failed to specifically analyze Standards 1 and 2, leaving the court to speculate regarding its argument. In any event, the court found no conflict between those standards and any statutes, court rules, or constitutional principles.

Regarding the county's argument that the MIDC was then considering granting additional authority to funding units to decide issues regarding the appointment of experts and the determination of indigency, the county had presented no evidence that the MIDC had promulgated standards to implement this strategy. Accordingly, this challenge was not ripe for judicial review. And regarding the county's claim that the MIDC was required to follow the APA, the court found the minimum standards exempt. The trial court rejected that the MIDC had promulgated compulsory rules and procedures disguised as guidelines, accepting instead that the Guide was explanatory, amounting to an exempt guideline or informational pamphlet.

The county now appeals.

## III. FACIAL CONSTITUTIONALITY

The county continues to contend that the MIDC Act is facially unconstitutional because it violates the separation of powers clause of Const 1963, art 3, § 2. The county asserts that the act impermissibly infringes on the constitutional authority of the Michigan Supreme Court by granting an executive branch agency broad authority to regulate the minimum qualifications, professional standards, and duties of attorneys who represent indigent criminal defendants.

We review de novo a trial court's resolution of a summary disposition motion. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). We also review de novo "[w]hether a statute is unconstitutional because it violates the separation-of-powers doctrine. . . ." *In re Petition of Tuscola Co Treasurer for Foreclosure*, 317 Mich App 688, 694; 895 NW2d 569 (2016). Underlying that consideration, we consider de novo the trial court's interpretation of the challenged statutes. *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011).

"Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Tuscola Co Treasurer*, 317 Mich App at 701 (quotation marks and citations omitted).

> We exercise the power to declare a law unconstitutional with extreme caution, and we never exercise it where serious doubt exists with regard to the conflict. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. Therefore, the burden of proving that a statute is unconstitutional rests with the party challenging it . . . . When

considering a claim that a statute is unconstitutional, the Court does not inquire into the wisdom of the legislation. [*In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307-308; 806 NW2d 683 (2011) (quotation marks, brackets, and citations omitted).]

"To make a successful facial challenge to the constitutionality of a statute, the challenger must establish that no set of circumstances exists under which the act would be valid." *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 303; 586 NW2d 635 (1998) (quotation marks, brackets, and citations omitted).

Const 1963, art 3, § 2 provides that "[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." It is beyond dispute that our Supreme Court possesses constitutional authority to regulate the practice of law as well as the conduct of attorneys and court proceedings. See Const 1963, art 6, § 4 ("The supreme court shall have general superintending control over all courts . . . ."); Const 1963, art 6, § 5 ("The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. . . ."). Our Supreme Court "has the power under Const 1963, art 6, § 5, to regulate and discipline the members of the bar of this state[,]" *Grievance Administrator v Lopatin*, 462 Mich 235, 241; 612 NW2d 120 (2000), and possesses constitutional authority to determine rules of practice and procedure in state courts, *McDougall v Schanz*, 461 Mich 15, 26-27; 597 NW2d 148 (1999).

It is also recognized, however, that "the separation-of-powers doctrine does not require an absolute separation of the branches of government[.]" *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017), oral argument gtd on the application ___ Mich ___; 907 NW2d 604 (2018).

"While the Constitution provides for three separate branches of government, the boundaries between these branches need not be airtight. In fact, in designing the structure of our Government and dividing and allocating the sovereign power among three co-equal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence. The true meaning of the separation-of-powers doctrine is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free Constitution." [*Id*. at 232-233 (brackets omitted), quoting *Makowski v Governor*, 495 Mich 465, 482; 852 NW2d 61 (2014).]

Therefore, " '[i]f the grant of authority to one branch is limited and specific and does not create encroachment or aggrandizement of one branch at the expense of the other, a sharing of power may be constitutionally permissible.' " *Cameron*, 319 Mich App at 233, quoting *Hopkins v Parole Bd*, 237 Mich App 629, 636; 604 NW2d 686 (1999); see also *Judicial Attorneys Ass'n*, 459 Mich at 297 ("This Court has established that the separation of powers doctrine does not require so strict a separation as to provide no overlap of responsibilities and powers.").

It is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments. [*Judicial Attorneys Ass'n*, 459 Mich at 297 (quotation marks and citation omitted).]

Here, any sharing or overlapping of functions required by the MIDC Act is sufficiently specific and limited that it does not encroach on the constitutional authority of the judiciary. Importantly, the act does not directly regulate trial courts or attorneys. Rather, the act regulates "indigent criminal defense system[s]," statutorily defined as funding units, rather than trial courts themselves. MCL 780.983(g). In this respect, as the trial court noted, the act "takes care to not encroach on the authority of the judicial branch." Further, the act repeatedly recognizes the Michigan Supreme Court's constitutional authority to regulate practice and procedure and to exercise general superintending control of Michigan courts. MCL 780.985(3) provides that the minimum standards proposed by the MIDC "shall not infringe on the supreme court's authority over practice and procedure in the courts of this state as set forth in [Const 1963, art 6, § 5]." MCL 780.991(3)(a) further provides:

A trial court may play a role in this [indigency] determination as part of any [ICDS's] compliance plan under the direction and supervision of the supreme court, consistent with [Const 1963, art 6, § 4]. Nothing in this act shall prevent a court from making a determination of indigency for any purpose consistent with [Const 1963, art 6].

As described by the trial court, the act's "express recognition of the constitutional role of the judiciary undercuts (but does not preclude) a facial challenge to the constitutionality of the act on separation-of-powers grounds." See *Straus v Governor*, 459 Mich 527, 543-544; 592 NW2d 53 (1999) (an executive order's express inclusion of the requirements of the constitutional provision that the order was said to violate weighed against finding the order unconstitutional).

Reinforcing the conclusion that the MIDC Act does not impermissibly infringe on the constitutional authority of the judiciary is that the act provides for enforcement of the minimum standards only on the ICDSs, not on attorneys or courts. For example, the ICDS, not attorneys or courts, must submit a compliance plan and cost analysis. See MCL 780.993(3). The funding unit, rather than attorneys or courts, is statutorily required to "comply with an approved plan under" the act. MCL 780.997(1). See also MCL 780.995 (providing procedures for resolving a dispute between the MIDC and an ICDS). Further, as the trial court correctly observed, the act contains no provision authorizing the MIDC to force the judiciary to comply with the minimum standards, nor does the act purport to control what happens in court. The MIDC is granted no authority regarding the licensure of attorneys, nor is it afforded any power to censure or sanction attorneys or judges. Instead, the act makes plain that with information provided by, among others, courts, MCL 780.991(1)(a), a county-controlled system is used to determine whether a criminal defendant is indigent and to provide qualified attorneys to represent indigent criminal defendants. See MCL 780.985(3); MCL 780.989(1); MCL 780.991(1). In addition, the act establishes that the quality of representation required of appointed defense attorneys is defined

by caselaw regarding the effective assistance of counsel, not by statutory or regulatory standards. See MCL 780.983(c); MCL 780.985(3); MCL 780.989(1); MCL 780.1003(1).

The county challenges the language in MCL 780.991(1)(a) stating that "[t]he delivery of [ICD] services *shall be independent of the judiciary* but ensure that the judges of this state are permitted and encouraged to contribute information and advice concerning that delivery of [ICD] services." (Emphasis added.) The county contends that this language divests the judiciary of its constitutional authority to establish and enforce minimum standards for delivering effective assistance of counsel to indigent criminal defendants. Again, however, MCL 780.991(3)(a) states in its final sentence that "[n]othing in this act shall prevent a court from making a determination of indigency for any purpose consistent with [Const 1963, art 6]." MCL 780.991(3)(a) also provides that "[a] trial court may play a role in this [indigency] determination as part of any [ICDS's] compliance plan under the direction and supervision of the supreme court, consistent with [Const 1963, art 6, § 4]." The Legislature has thus recognized the authority of the judicial branch with respect to indigency determinations. Although the exact respective roles of the ICDSs and the trial courts in making indigency determinations is not fully addressed by the parties in this case, it is sufficiently clear from MCL 780.991(3)(a) that the judiciary has not been deprived of its constitutional authority in this area.[1] As the MIDC act can be readily harmonized with the judiciary's powers, the trial court properly rejected Oakland County's facial attack.

## IV. LEGALITY OF MINIMUM STANDARDS

Oakland County also contends that the four minimum standards proposed by the MIDC and approved by LARA violate the separation of powers doctrine and are otherwise not authorized by law.

The county repeatedly points out that the Supreme Court's conditional approval of the standards was automatically withdrawn on December 31, 2016, because the Legislature's revisions of the MIDC Act did not take effect by that date. But the expiration of the Supreme

---

[1] The county also refers to the MIDC's development of a proposed standard to make the management and delivery of ICD services independent of the judiciary. The county acknowledges, however, that LARA has not approved any such standard. A minimum standard proposed by the MIDC must be approved by LARA in order to constitute "a final department action subject to judicial review . . . ." MCL 780.985(5). "The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Huntington Woods v Detroit*, 279 Mich App 603, 615-616; 761 NW2d 127 (2008) (quotation marks and citation omitted). The county's challenge is premised on hypothetical future events and is therefore not ripe for judicial review. In addition, it is important to emphasize that actions taken by the MIDC are not pertinent in determining the constitutionality of the act itself. See *Judicial Attorneys Ass'n*, 459 Mich at 304 (noting that "[t]he constitutionality of an act must rest on the provisions of the act itself[]" rather than on subsequent actions taken by persons or entities that are affected by the act).

Court's conditional approval is not dispositive because the MIDC was removed from the judicial branch and placed within the executive branch. See MCL 780.985(1); MCL 780.983(b). It is LARA, rather than the Supreme Court, that now decides whether to approve a minimum standard proposed by the MIDC. See MCL 780.985(4), (5); MCL 780.983(b). It is undisputed that LARA approved the MIDC-proposed standards. Given these developments, the automatic expiration of the Supreme Court's conditional approval (based on the *prior* version of the MIDC Act) fails by itself to establish that the minimum standards are not authorized by law.

The county further asserts that the standards "micromanage attorneys who represent indigent defendants, from their education and training to their duties throughout the entire pendency of a case." But the county fails to flesh out its argument that Standards 1 and 2 are not authorized by law. Instead, the county simply quotes or summarizes portions of each standard and then conclusorily asserts that the standard is unconstitutional under the separation of powers doctrine because it usurps the Supreme Court's authority. "It is not sufficient for a party simply to announce a position or assert an error and then leave it to up this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).

And the trial court correctly concluded that Oakland County failed to establish that Standard 3 not authorized by law. As the court noted, "[t]he purportedly offending section of Standard 3 states that 'Counsel shall request the assistance of experts where it is reasonably necessary to prepare the defense and rebut the prosecution's case. Reasonable requests must be funded as required by law.' " The trial court properly explained:

> This standard does not conflict with a trial judge's discretion to permit the appointment of an expert witness. See MCL 775.15; *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003). Rather, the standard notes that experts must be funded "*as required by law.*" In other words, the request must be funded "as required by" the very authority which Oakland County accuses the MIDC of disregarding. Nor does Standard 3 in any way interfere with the trial court's gate-keeping functions under MRE 702. There is no evident conflict.

The county's remaining contentions consist of merely generalized assertions that lack sufficient elaboration. The county again contends that the Supreme Court did not delegate its authority to regulate professional standards and duties of indigent defense counsel to the legislative or executive branches. The county suggests that the obligation to regulate attorneys and courts has been "foisted" onto the funding units, which, according to the county, are being statutorily forced to act as proxies for the MIDC even though the funding units lack constitutional authority to regulate the conduct of attorneys or to implement or enforce the minimum standards. These aspects of the county's argument, however, challenge the provisions of the act itself and, as already noted, the county's constitutional challenge lacks merit.

-9-

## V. APPOINTED COUNSEL AT ARRAIGNMENTS

The county raises a more specific challenge to Standard 4, asserting that it requires the appointment of counsel at arraignment even though neither the federal nor state constitution demand representation at that stage of criminal proceedings.

Standard 4 provides, in pertinent part:

Counsel shall be assigned as soon as the defendant is determined to be eligible for [ICD] services. The indigency determination shall be made and counsel appointed to provide assistance to the defendant as soon as the defendant's liberty is subject to restriction by a magistrate or judge. Representation includes but is not limited to the arraignment on the complaint and warrant. Where there are case-specific interim bonds set, counsel at arraignment shall be prepared to make a de novo argument regarding an appropriate bond regardless of, and, indeed, in the face of, an interim bond set prior to arraignment which has no precedential effect on bond-setting at arraignment. . . .

The county again contends that this standard is not authorized by law and we are again unconvinced. The county asserts that, by enacting Standard 4, "[t]he MIDC and LARA created a new constitutional right to counsel at arraignment . . . ." It is true that the federal constitution does not *require* the appointment of counsel at arraignment. See *People v Green*, 260 Mich App 392, 400; 677 NW2d 363 (2004), overruled on other grounds by *People v Anstey*, 476 Mich 436 (2006); *People v Horton*, 98 Mich App 62, 72; 296 NW2d 184 (1980). But this does not mean that the appointment of counsel at arraignment is constitutionally *prohibited*. Absent a state constitutional prohibition, states are free to enact legislative "protections greater than those secured under the United States Constitution . . . ." *People v Harris*, 499 Mich 332, 338; 885 NW2d 832 (2016). The Legislature did so in the MIDC Act. MCL 780.991(3)(a) provides for a determination of indigency, which will lead to the appointment of counsel, "*not later than* the defendant's first appearance in court." (Emphasis added.) In addition, MCL 780.991(2)(d) provides for continuous representation by the same defense counsel "at every court appearance throughout the pendency of the case."[2] See also MCL 780.991(1)(c) (providing that "[a]ll adults, except those appearing with retained counsel or those who have made an informed waiver of counsel, shall be screened for eligibility under [the MIDC Act], and counsel shall be assigned as soon as an indigent adult is determined to be eligible for [ICD] services.").

---

[2] MCL 780.991(2)(d) further provides that ICDSs "may exempt ministerial, nonsubstantive tasks, and hearings from" the requirement that the same defense counsel continuously represent and personally appear at every court appearance throughout the case. A comment to Standard 4 states that "an on-duty arraignment attorney" may represent a defendant at an arraignment and that "[t]his appointment may be a limited appearance for arraignment only with subsequent appointment of different counsel for future proceedings. In this manner, actual indigency determinations may still be made during the arraignment."

The county's argument that Standard 4 infringes on the Supreme Court's constitutional authority over practice and procedure also lacks merit. Contrary to the county's challenge, Standard 4 does not conflict with the Michigan Court Rules. MCR 6.005(B) requires the arraigning court to determine indigency if the defendant requests a lawyer and claims a financial inability to retain a lawyer, and lists factors to consider in determining indigency. MCR 6.104(E)(3) requires the arraigning court to advise the defendant "of the right to a lawyer at all subsequent court proceedings and, if appropriate, appoint a lawyer[.]" MCR 6.005(A)(1) requires the arraigning court to advise the defendant of the right "to a lawyer's assistance at all subsequent court proceedings," and § (A)(2) provides "that the court will appoint a lawyer at public expense if the defendant wants one and is financially unable to retain one." MCR 6.005(D) provides that the court must promptly appoint a lawyer if the defendant is financially unable to retain a lawyer.

The language of MCR 6.005(B), providing for a determination of indigency at the arraignment and listing factors to consider in making the indigency determination, does not expressly conflict with the language of Standard 4, requiring the assignment of counsel as soon as the defendant is deemed eligible for ICD services, that the indigency determination be made and counsel appointed as soon as the defendant's liberty is subject to restriction, and that representation includes but is not limited to the arraignment. Actual indigency determinations may still be made at the arraignment in conformance with the court rule. It is possible for an on-duty arraignment attorney to represent the defendant but different counsel to be appointed for future proceedings. Court rules providing for advising a defendant concerning his right to counsel at subsequent court proceedings and providing for the prompt appointment of a lawyer likewise do not conflict with the language of Standard 4 providing for representation at the arraignment. Absent an inherent conflict with a court rule, "there is no need to determine whether there was an infringement or supplantation of judicial . . . authority." *Stenzel v Best Buy Co, Inc,* 320 Mich App 262, 276; 906 NW2d 801 (2017), lv gtd ___ Mich ___; 909 NW2d 255 (2018); see also *Kern v Kern-Koskela,* 320 Mich App 212, 222; 905 NW2d 453 (2017) (noting that "this Court should not lightly presume" an intent to create a conflict that calls into question our Supreme "Court's authority to control practice and procedure in the courts[]") (quotation marks and citations omitted).[3] The county's challenge thus lacks merit.

VI. ADMINISTRATIVE PROCEDURES ACT

Finally, Oakland County asserts that the MIDC's "rules and procedures" have no force and effect as the MIDC failed to comply with the promulgation requirements of the APA, MCL 24.201 *et seq*.

The county acknowledges that the minimum standards established by the MIDC are not subject to the requirements of the APA. See MCL 24.207(r) (excluding from the definition of a "rule" under the APA "[a] minimum standard approved or established under authority granted by the [MIDC Act]"); MCL 780.985(4) (providing that "[a]n approved minimum standard for the

---

[3] In both *Stenzel* and *Kern,* this Court addressed a purported conflict between a statute and a court rule, but the principles set forth in those cases apply by analogy here.

-11-

local delivery of [ICD] services within an [ICDS] is not a rule as defined in section 7 of the [APA]"). The county contends, however, that the MIDC has enacted compulsory rules and procedures disguised as guidelines and instructions without complying with the requirements of the APA.

In defining a "rule" subject to the requirements of the APA, the Legislature expressly excluded "[a] form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory." MCL 24.207(h).

> The label an agency gives to a directive is not determinative of whether it is a rule or a guideline under the APA. Instead, courts must examine the actual action undertaken by the directive, to see whether the policy being implemented has the effect of being a rule. An agency may not circumvent APA procedural requirements by adopting a guideline in lieu of a rule. [*Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 582; 609 NW2d 593 (2000), aff'd sub nom *Byrne v Michigan*, 463 Mich 652 (2001) (quotation marks, brackets, and citations omitted).]

A review of the Guide and the Compliance Plan published by the MIDC reveals that these documents are merely explanatory and do not contain compulsory provisions. In its introductory section, the Guide states, "These guidelines are designed to assist with the preparation of the cost analysis and compliance planning for delivering [ICD] services." With respect to cost analysis, the Guide states, in relevant part:

> Reasonableness will be stressed and a list or guideline for allowable costs will be provided. Costs cannot be excessive. It will be difficult for this guideline to be exhaustive of all possible financial scenarios. To minimize rejections after official submission, systems should contact their MIDC Regional Manager, before submissions, to discuss compliance plan costs that pose situations not addressed in guidelines.

The Guide later indicates that "a rate of no more than $25 per credit hour" should be used for annual CLE courses.

The Compliance Plan states that "[t]his document includes instructions and a compliance plan structure for the submission and information on how to calculate your request for state funding." It continues, "The following instructions provide general guidance for the Cost Analysis and, specifically, the enhanced costs to meet the provisions of the four standards. The costs, expenditures, and rates proposed are presumed reasonable; variations will be considered on a case-by-case basis." The Compliance Plan indicates that "[r]egistration for CLE hours will be allowed at the rate of $25 per credit hour." It further provides, "If it is necessary to create or alter building space to provide a confidential setting for attorneys and their clients, renovation expenses are allowed up to a maximum of $25,000 per location. Requests exceeding $25,000 will be reviewed with higher due diligence and considered with accompanying documentation for justification." Also, "[e]xpenses for investigators will be considered at hourly rates not to

exceed $75." A tiered level of compensation was provided for experts on the basis of education level and area of expertise.

The county mischaracterizes the Guide and the Compliance Plan as creating compulsory provisions. Instead, these documents provide guidance concerning the submission of compliance plans and cost analyses. An emphasis is placed on making the costs reasonable, i.e., not excessive. Although certain amounts are essentially designated as reasonable, it is clear that variations from these amounts will be considered on a case-by-case basis, and ICDSs are encouraged to contact their MIDC regional manager with questions about costs and particular items before submitting their compliance plans and cost analyses. As the trial court noted, "[t]his is indicative of a more flexible, guiding process as is anticipated by MCL 24.207(h), rather than the imposition of 'rules,' as that term is used in the APA." See *Kent Co Aeronautics Bd*, 239 Mich App at 583 (concluding that certain criteria published by a governmental agency did not create a legal obligation but merely provided advice by way of an explanation and thus did not comprise rules). The APA therefore does not apply.

We affirm.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Anica Letica

-13-