*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 14, 2024

Plaintiff-Appellee,

v

No. 362864
St. Joseph Circuit Court
LC No. 2021-024096-FH

ADALBERTO GARCIA,

Defendant-Appellant.

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant, Adalberto Garcia, appeals by right his jury convictions of one count of using the computer or internet to communicate with another to commit a crime, MCL 750.145d(2)(e), and two counts of aggravated possession of child sexually abusive material (CSAM), MCL 750.145c(4). Garcia was sentenced, as a second-offense habitual offender, MCL 769.10, to 36 to 270 months' imprisonment for using a computer or Internet to communicate with another to commit a crime, and 36 months' to 15 years' imprisonment for each count of aggravated possession of CSAM. Each sentence was to be served concurrent with the others. On appeal, Garcia argues defense counsel was ineffective for (1) failing to retain an expert witness to rebut the prosecution's expert witness on electronic data; (2) failing to educate himself and investigate before trial about the electronic data at issue in the case; and (3) failing to challenge a biased juror who recently babysat for the prosecutor. Finding various deficiencies with trial counsel's performance, but no resulting prejudice, we affirm.

## I. BACKGROUND

This case arises out of Garcia viewing of CSAM on the mobile application Snapchat.[1] Detective Trooper Kyle Bowers of the Michigan State Police Computer Crimes Unit received a

---

[1] Snapchat is a social media application primarily used for image sharing.

tip in April 2021 from the National Center for Missing and Exploited Children (NCMEC),[2] after Snapchat reported an instance of CSAM stemming from an IP address associated with Garcia's home. Bowers also obtained a search warrant for Snapchat to reveal the username, e-mail address, and birthdate associated with the Snapchat account. In response to the search warrant, Snapchat returned a username and e-mail address similar to another e-mail address associated with Garcia that Bowers found searching a database maintained by the Michigan Department of Corrections (MDOC). Bowers interviewed Garcia at his work and seized his cell phone. A search of the cell phone revealed an iCloud[3] username that was similar to, but slightly different than, the username for the Snapchat account that was streaming CSAM. A subsequent search of Garcia's bedroom at home revealed electronics with other similar usernames.

At trial, during jury selection, one potential juror indicated she knew the prosecutor, and babysat for her children a few months before. When asked, the juror agreed she could remain impartial. Notably, and much to the trial court's surprise, neither the prosecution nor defense counsel used any for-cause or preemptory challenges during jury selection, and the juror who had babysat for the prosecution was selected to serve on the jury.

Bowers testified as a fact and expert witness regarding his investigation and forensic analysis of Garcia's electronics. There was no defense expert to counter Bowers's testimony. Defense counsel only explained this was because of "personal reasons for the family," which Garcia asserts on appeal addressed the family's inability to afford an expert.

Additionally, in a discussion outside the presence of the jury, Bowers, the prosecution, defense counsel, and the trial court discussed concerns about how Bowers could testify he retrieved Garcia's other e-mail address without discussing Garcia's prior criminal history. There was significant confusion about how Bowers would go about doing so, and during the discussion, defense counsel stated:

> Um, a couple things come to mind. One, yeah, when I was going through it, it was my head that was about to explode. I was having trouble following and getting the connection. I know it's unfortunate we were unable to secure the expert, for personal reasons for the family, but it's—yeah, it's been—this has been confusing to me and how to make the connection and I know the Trooper, I understand he's having to be very careful too, you know, any connection to MDOC and all that stuff, so I—I don't know.

---

[2] NCMEC is a quasi-governmental, nonprofit organization that operates as a clearinghouse for information about victims of child sex crimes and abduction. One of its functions is to confirm the identity (or age) of known victims of CSAM when criminal investigations recover depictions of known victims or confirm the minority of victims when investigations recover known depictions. Another function is to identify new victims from newly-generated CSAM.

[3] iCloud is an Internet data storage software which allows users to store and sync data across various electronic devices, such as cell phones and computers.

The parties ultimately agreed that Bowers would testify he found the e-mail address in a database to which law enforcement had access, without any further elaboration.

During cross-examination, defense counsel elicited testimony highlighting weaknesses in Bowers's expert testimony. This testimony included acknowledging (1) there was no proof Garcia used Snapchat on the day the CSAM was flagged; (2) no CSAM was found on the electronics seized from Garcia's bedroom; (3) the CSAM images were only saved to the Snapchat photograph roll associated with the "Officialalpha-J" account, which was not expressly attached to Garcia's legal name; (4) there were slight differences in the capitalization and spelling between Garcia's e-mail address and the username "Officialalpha-J;" and (5) an individual could have hacked Garcia's account or created a fake one.

The jury convicted Garcia of one count of using the computer or Internet to communicate with another to commit a crime, MCL 750.145d(2)(e), and two counts of aggravated possession of child sexually abusive material (CSAM), MCL 750.145c(4). Garcia now appeals.

## II. LAW AND ANALYSIS

Garcia argues defense counsel was ineffective for failing to retain or call a defense expert, failing to properly educate himself on the technological aspects of the case, and failing to challenge and remove a biased juror. While we agree defense counsel's actions were sometimes concerning, we find no demonstrable prejudice, and therefore affirm Garcia's convictions.

A defendant's ineffective-assistance-of-counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews the trial court's findings of fact for clear error, while it reviews questions of law de novo. *People v Trakhtenberg*, 493 Mich 38, 48; 826 NW2d 136 (2012). When there has been no evidentiary hearing held below, this Court's review is limited to mistakes apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part, lv den in remaining part 493 Mich 864 (2012). "If the record does not contain sufficient detail to support [a] defendant's ineffective assistance claim, then he has effectively waived the issue." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2012).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. For a defendant to succeed on an ineffective-assistance-of-counsel claim, the defendant must show "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id.* at 52. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Id.* "Initially, a court must determine whether the 'strategic choices [were] made after less than complete investigation,' and any choice is 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id.* (citation omitted, alteration in original). "Counsel always retains the 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Id.* (citation omitted).

"The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Id.* (quotation marks and citation omitted, alteration in original). This Court will not substitute its own judgment for that of counsel or use the benefit of hindsight in assessing the defense counsel's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Defense counsel is not ineffective merely because a trial tactic did not succeed. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

## A. FAILURE TO CALL AN EXPERT WITNESS

Garcia first argues defense counsel was ineffective for failing to obtain an expert witness to rebut Bowers's testimony. We agree that defense counsel was deficient, but find no resulting prejudice.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). However, "[d]efense counsel's failure to investigate and attempt to secure a suitable expert witness to assist in preparing the defense may constitute ineffective assistance." *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018). Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). After investigation, effective counsel "need not always provide 'an equal and opposite expert.' " *Carll*, 322 Mich App at 702, quoting *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011). Regarding prejudice, "[w]ithout some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *Carll*, 322 Mich App at 703.

Regarding the first prong of the *Strickland* test, we find defense counsel's performance fell below an objective standard of reasonableness. "On May 22, 2017, [the Department of Licensing and Regulatory Affairs] LARA approved the [Michigan Indigent Defense Commission's] MIDC's proposed minimum standards for guaranteeing the delivery of indigent criminal defense (ICD) services (substantively, the same standards that had been conditionally approved by the Supreme Court)." *Oakland Co v Michigan*, 325 Mich App 247, 253; 926 NW2d 11 (2018), citing MIDC, Minimum Standards for Indigent Criminal Defense Services (2017). Relevant to this case, "Standard 3 describe[s] standards for investigations and for certain expert-witness matters." *Oakland Co*, 325 Mich App at 254. "Standard 3 provides that counsel must request the assistance of experts when reasonably necessary and that reasonable requests must be funded as required by law." *Id.* at 258.

The only reason defense counsel provided for not obtaining a rebuttal expert was financial difficulty. Given the funds available in such circumstances, this decision was not objectively

reasonable, nor was it sound trial strategy, because the reasoning was not rooted in strategy at all. But Garcia has failed to establish he was prejudiced by defense counsel's decision. As noted, "[a] defendant is prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Carll*, 322 Mich App at 703. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *Id.* On appeal, Garcia alleges a defense expert could have rebutted Bowers's testimony, but fails to explain how this hypothetical expert would have done so. Defense counsel extensively cross-examined Bowers, and highlighted various flaws in Bowers's reasoning and findings without a separate expert. Garcia has provided no testimony a hypothetical expert could provide in excess of defense counsel's cross-examination which would likely change the outcome of this case, and, as such, has failed to establish prejudice under *Strickland*. Therefore, defense counsel was not ineffective for failing to call a rebuttal expert witness.

## B. FAILURE TO INVESTIGATE

Garcia next argues defense counsel was ineffective because he was unable to understand the electronic data presented by the prosecution, and failed to obtain expert advice to better understand this data. We disagree.

As previously discussed, for a defendant to succeed on an ineffective-assistance-of-counsel claim, the defendant must show "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. In support of his argument that defense counsel did not understand the data at issue in the case, Garcia highlights a portion the trial transcript, provided above, in which defense counsel admitted he "was having trouble following and getting the connection[,]" and that his head "was about to explode." However, Garcia takes these statements out of context. As explained above, defense counsel, in this instance, was merely informing the trial court that he, too, was having difficulty figuring out how Bowers would testify about where he found Garcia's other e-mail address (in an MDOC database) to the jury without bringing up Garcia's criminal history. This was not an admission of failing to understand the data in the case, as Garcia contends. On the contrary, defense counsel demonstrated sufficient understanding of the data during cross-examination when he was able to point out various flaws in Bowers' testimony. Outside this statement, Garcia does not provide any other instances of defense counsel's alleged incomprehension of the technological minutiae of this case which would rise to the level of ineffective assistance. Because there is no evidence defense counsel was unable to understand the electronic data of this case, there is no evidence his performance fell below the objectively reasonable standard required, nor is there any evidence of prejudice.[4]

---

[4] We note that, on appeal, Garcia contends analysis of this claim does not fall under the *Strickland* test, but instead follows a separate analysis under *US v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), which held that there are some "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658.

## C. FAILURE TO CHALLENGE THE JUROR

Garcia lastly argues defense counsel was ineffective for failing to challenge the juror who previously babysat for the prosecution. We disagree.

Again, to establish ineffective assistance of counsel, a defendant must show "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Decisions related to the selection of jurors is generally a matter of trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001).

The United States and Michigan Constitutions entitle a defendant to a trial by an impartial juror. US Const, Am IV; Const 1963, art 1, § 20. "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Unger*, 278 Mich App at 254 (quotation marks and citation omitted, alteration in original). "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *Johnson*, 245 Mich App at 256. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *Unger*, 278 Mich App at 258. Reviewing courts "cannot see the jurors or listen to their answers to voir dire questions." *Id.* (quotation marks and citation omitted). Therefore, "this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *Id.*

We begin the *Strickland* analysis by noting our concern regarding defense counsel's failure to exercise any for-cause or preemptory challenges. While we acknowledge the decision is generally one of discretion and strategy, considering the concern regarding the juror in question on appeal, it seems unlikely defense counsel's decision not to make *any* challenges was part of any sound trial strategy. Also concerning is the trial court's failure to sufficiently follow up with the prosecution and defense counsel about this matter, particularly since it was noticeably surprised by the lack of challenges.

But, regardless of the potential for this conduct to fall below the objective reasonableness standard, because Garcia has not identified any prejudice he suffered as a result of this decision, his ineffective-assistance-of-counsel claim fails. The juror at issue on appeal confirmed she could remain impartial despite her prior relationship with the prosecutor, and there is no evidence in the record indicating she failed to act accordingly. Again, "[j]urors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *Johnson*, 245 Mich App at 256. Garcia has not satisfied this burden. As such, we conclude defense counsel was not ineffective for failing to challenge the juror at issue.

We affirm.

---

However, this case does not qualify for consideration under any of the three situations listed in *Cronic*, and we therefore decline to address the matter further.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood