*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALISE WILLIAMS, Individually and as Personal Representative of the ESTATE OF TYRONNE WILLIAMS, DEREK ROQUEMORE, WILLIAM WILLIAMS, TYWANN WILLIAMS, and TYRENE WILLIAMS,

UNPUBLISHED
March 20, 2026
12:50 PM

Plaintiffs-Appellants,

v

LGC GLOBAL, INC.,

No. 371451
Wayne Circuit Court
LC No. 21-004145-NO

Defendant/Cross-Plaintiff,

and

PATRICK HORIZONTAL DRILLING, LLC,

Defendant/Cross-Defendant,

and

SURESH PATEL and CITY OF DETROIT,

Defendants-Appellees.

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Plaintiffs filed this negligence action in 2021. In 2023, the trial court entered two orders in favor of defendants Suresh Patel and the city of Detroit. The first granted summary disposition pursuant to the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, under MCL 2.116(C)(7) (claim barred by operation of law). The second reiterated that the court had granted summary disposition to Patel and Detroit under MCR 2.116(C)(7) and dismissed them

-1-

from the case.[1]  Plaintiffs later settled with the remaining parties.  In June 2024, the trial court entered a stipulated order dismissing the action with prejudice.  This was a final order and closed the case.  Plaintiffs now appeal as of right from the June 2024 order.  We reverse and remand to the trial court to explicitly explain its rationale.

## I.  FACTUAL BACKGROUND

In the afternoon on September 12, 2019, plaintiff Alise Williams left her house in Detroit, Michigan, to take a trip to the store.  Williams's husband, Tyronne, remained at home.  Tyronne suffered from dementia and was generally bedridden.  On the day in question, a maintenance crew was working on replacing a water main pipe that serviced Williams's street.  Five fire hydrants in the area were inoperable while the crews worked on the water main pipe.  Around 4:33 p.m., neighbors noticed smoke coming from Williams's house and called 911 for assistance.  The Detroit Fire Department (DFD) responded to the call in approximately three minutes.  On arrival, the crew attempted to locate a fire hydrant.  The crew's engineer observed that the first available hydrant was buried in mud, which indicated to him that the hydrant was out of service.  The engineer checked a second hydrant, which was far enough from the house that it required attaching another hose.  After attaching the hose, the engineer saw that the second hydrant was also surrounded by dirt and likely inoperable.  He tried attaching to it in the hopes that it might be functional, but it was not working.  While attempting to hook to the second hydrant, a worker told the firefighters that the hydrant was out of order.  The engineer was instructed by a superior to try a third hydrant, which was physically closest to the home.  That hydrant was working.  Although the third hydrant was closest to the home, it was 175 feet behind the fire truck and on the other side of a median, meaning it was not the most appropriate to use based on the fire truck's location at the scene.  The DFD was able to put out the fire, but by the time they were able to safely enter the house, Tyronne had passed away.

According to an investigation conducted by the DFD after the fact, plaintiff admitted to giving Tyronne a cigarette before she left him alone in the house.  Lieutenant Theodore L. Copley of the DFD's Arson Section surmised "that the ignition source was most probabl[y] a cigarette lighter or a cigarette itself."  An insurance investigator alternatively speculated that the fire could have been caused by a faulty electrical cord.  Although there was smoke damage throughout the home, the fire damage was confined to the first floor.  On the exterior, the only fire damage was at the windows of the first-floor bedroom and a sunroom.  In his report, Lieutenant Copley explained:

> It is this writer's opinion that the above fire resulting in the death of Mr. Tyronne Williams originated on top of the bed where Mr. Williams was lying.  The most probable cause of ignition was careless smoking.  An electrical event occurring on top of the bed could not be eliminated.  Therefor[e,] the ignition source of the fire is undetermined.  Although the exact ignition source could not be

---

[1] Plaintiffs filed an application for leave to appeal the order dismissing defendants from the case. This Court denied the application in August 2023.  *Estate of Tyronne Williams v LGC Global, Inc*, unpublished order of the Court of Appeals, entered August 11, 2023 (Docket No. 365755).

determined both hypothesis [sic] of ignition are accidental in nature. Therefore, after a thorough investigation utilizing a method consistent with the guidelines of NFPA 912 and considering interviews with the residence [sic] and fire patterns observed it is this writer's opinion that the fire . . . was accidental.

Jeff Patrick, the owner of Patrick Horizontal Drilling, LLC, confirmed in his deposition that Patel did not mark the fire hydrants that were affected by the water shutoff to indicate that they were out of service before the fire. After the fire, Patel walked over to his vehicle, retrieved some "out of service discs," and instructed Patrick to have his crew install them. There were not enough for all of the hydrants that were not working, so the crew used heavy plastic and caution tape to signify that the hydrants were out of service.

Williams, as personal representative of her husband's estate, along with their four children (collectively "plaintiffs") thereafter filed suit against LGC Global, Inc., the company responsible for the water main repair. In an amended complaint, plaintiffs later named as defendants Patrick Horizontal Drilling, LLC, Suresh Patel, in his capacity as an inspector for the Detroit Water and Sewage Department (DWSD), and the city of Detroit. Plaintiffs alleged that defendants were grossly negligent for failing to use reasonable care during the water main replacement and failing to notify authorities that some of the fire hydrants in the area were out of service. Plaintiffs claimed that this failure was the proximate cause of Tyronne's death. Along with the claim of gross negligence, plaintiffs also made claims of wrongful death, negligent infliction of emotional distress, strict liability for an abnormally dangerous activity, and loss of consortium. In an amended complaint, plaintiffs added a claim stating that defendants were liable for violating their rights under the state constitution.

In October 2022, Patel and Detroit moved for summary disposition under MCL 2.116(C)(7) (claim barred by operation of law) and (C)(8) (failure to state a claim). They argued that they were entitled to summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity under the GTLA. As to plaintiffs' state constitutional law claim, Patel and Detroit relied on MCR 2.116(C)(8), arguing that the claim could not be brought against a municipality.

In March 2023, the court used a praecipe order to dismiss plaintiffs' claims against Patel and the city of Detroit without oral argument. It did not provide any substantive explanation for its ruling. Instead, it indicated in a handwritten notation that "Suresh Patel and the City of Detroit have Governmental Immunity." In April 2023, the court entered an order reiterating that it had granted summary disposition to Patel and Detroit "for the reason they [sic] are entitled to governmental immunity" and dismissing them from the case. Litigation between the remaining parties continued until June 2024, when the trial court entered a stipulated order dismissing the case with prejudice. This appeal followed.

II. ANALYSIS

Plaintiffs argue that the trial court erred by granting summary disposition to Patel and Detroit on the basis of governmental immunity. Relatedly, they maintain that granting summary disposition in this matter prior to the closure of discovery was premature. Plaintiffs also argue that it was error for the trial court to dismiss their claim that defendants violated plaintiffs' rights under

the state constitution. We conclude that the record is not sufficient to allow for meaningful appellate review.

As earlier discussed, the trial court granted summary disposition to Patel and Detroit without oral argument and without issuing a written opinion that would enable us to determine if the trial court reached the right outcome for the proper reasons. All we have to review is a one-page order, entered in March 2023, which reads, "Suresh Patel and the City of Detroit have Governmental Immunity." The April 2023 order dismissing Patel and Detroit from this matter is similarly devoid of explanation, stating, "Defendants City of Detroit and Suresh Patel's Motion for Summary Disposition is GRANTED, for the reason they [sic] are entitled to governmental immunity." There is no explanation for how the trial court reached this outcome. We recognize that courts need not make detailed findings of fact or conclusions of law "unless findings are required by a particular rule," MCR 2.517(A)(4), and that MCR 2.116 does not require the court to go to such lengths. Nevertheless, the trial court has effectively frustrated any appellate review here. Not only do we have no record with which to evaluate whether the court properly granted summary disposition to defendants as to plaintiffs' governmental immunity claim, it is likewise unclear whether the court intended to grant summary disposition of plaintiffs' state constitutional law claim under MCR 2.116(C)(7), or whether it simply overlooked that claim.

Unfortunately, this is far from an isolated incident. This trial court judge habitually uses praecipe form orders to rule on motions while dispensing with oral argument and failing to provide a rationale for its determination. See, e.g., *Davis v Young*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2021 (Docket No. 355516); *McPartlin v RK Equipment Repair, Inc*, unpublished per curiam opinion of the Court of Appeals, issued July 6, 2023 (Docket No. 359584); *Arellano v US Ecology Livonia, Inc*, unpublished per curiam opinion of the Court of Appeals, issued May 25, 2023 (Docket No. 360668); *Al-Ghami v Al-Jahmi*, unpublished per curiam opinion of the Court of Appeals, issued September 14, 2023 (Docket No. 361932) (JANSEN, J., concurring); *Booth v Legacy CHM*, unpublished order of the Court of Appeals, entered September 24, 2021 (Docket No. 358650); *RK v Progressive Mich Ins Co*, unpublished order of the Court of Appeals, entered August 21, 2023 (Docket No. 365757).

We understand the daily pressures and commitments trial judges face.[2] We appreciate their commitment to do justice. Even so, appellate courts likewise have obligations and requirements

---

[2] Trial courts are under continuing pressure to meet the overwhelming demands of the job. This is not a new phenomenon—it has persisted for decades. At times it can be overwhelming. Trial court judges and their staff are on the frontlines of managing conflict between the litigants who ask for assistance with their disputes. But that is not the only work of a trial court judge. The job is multi-dimensional. Judges engage in conflict resolution (at times with self-represented litigants who may not understand the law or how to litigate), manage their personal staff, oversee the daily administration of their individual work environment, sometimes with less than optimal tools, collaborate with other judges and stakeholders on special projects, work off bench (and sometimes after hours) to prepare their cases (at times without assistance of support staff), and the list goes on. See *Judicial Attorneys Assn v State*, 459 Mich 291, 298; 586 NW2d 894 (1998) (recognizing there is no more complex public work environment in Michigan than that of state trial courts);

to get their jobs done. The Michigan Court of Appeals is an error correcting court. *Wolfenbarger v Wright*, 336 Mich App 1, 27; 969 NW2d 518 (2021). Our "review is limited to the record established by the trial court[.]" *Id*. Without at least minimal explanation from the trial court, we cannot discharge our duty to either correct or affirm a trial court determination. The practice of entering orders without explanation is problematic because it precludes meaningful appellate review, but it is also harmful to every single litigant whose case is disposed of in this manner, even those who benefit from the ultimate outcome. Justice requires more than what was done here. Accordingly, on remand, we direct the trial court to provide an explanation of its rationale for granting summary disposition to Patel and Detroit as to plaintiffs' governmental immunity and state constitutional law claims.

Reversed and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

National Center for State Courts, *Michigan Judicial Workload Assessment* (September 2019), available at <https://www.courts.michigan.gov/4a659f/siteassets/reports/statistics/judicial-resources/judicial workloadassessment2019.pdf> (accessed March 19, 2026); National Center for State Courts, *State of the State Courts 2024 Poll*, available at <https://www.ncsc.org/sites/default/files/media /document/State-of-the-State-Courts-2024.pdf> (accessed March 19, 2026).

# Court of Appeals, State of Michigan

## ORDER

ALISE WILLIAMS V LGC GLOBAL INC

Docket No.    371451

LC No.    21-004145-NO

Michael F. Gadola
Presiding Judge

Thomas C. Cameron

Michelle M. Rick
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings.  A copy of this order and accompanying opinion shall be served on the chief judge for the 3rd Circuit Court to ensure compliance.

Appellant must initiate the proceedings on remand within 56 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. If requested, the trial court shall hold a hearing.  If the parties agree to any extension beyond 56 days, the trial court shall provide this court with its order granting or denying the extension.

As stated in the accompanying opinion, because the record is not sufficient for our appellate review, the Court vacates and remands for further proceedings.  On remand, the trial court shall decide appellees' motion for summary disposition with a detailed analysis.  The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.  We retain jurisdiction.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 20, 2026
Date

Chief Clerk